**LAURATEX TEXTILE CORP., Plaintiff,**

v.

**ALLTON KNITTING MILLS INC. and Martin Levine, Defendants.**

No. 80 Civ. 5318 (KTD).

United States District Court, S. D. New York.

Aug. 3, 1981.

Helfat & Helfat, New York City, for plaintiff; Bernard A. Helfat, New York City, of counsel.

Fogel, Kamhi & Spiegler, New York City, for defendants; Martin W. Fogel, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is an action for injunctive relief and damages based upon the alleged infringement of a copyright under 17 U.S.C. § 501 (1976). Plaintiff Lauratex Textile Corp. ["Lauratex"] is a New York corporation engaged in the business of converting greige goods into printed textiles for apparel. The plaintiff accuses the defendants Allton Knitting Mills, Inc., a New York corporation, and Martin Levine, its presi-

dent and sole employee, of duplicating a fabric design which plaintiff had created, copyrighted and successfully sold in the market. The defendants allegedly sold this copied version to several of plaintiff's customers at a lower price. Less than one month after the complaint was filed, the defendants consented to a preliminary injunction from the further production of this fabric design. The parties were unable to agree, however, on an appropriate measure of damages. Consequently, a one day non-jury trial was held before me on January 8, 1981. The following shall constitute my findings of fact and conclusions of law.

## I

This is not a case where the alleged infringement results from a design which is similar but not identical to that belonging to the plaintiff. *See, e.g., Harlequin v. Gulf and Western Company*, 644 F.2d 946 (2d Cir. 1981); *Malden Mills Inc. v. Regency Mills Inc.*, 626 F.2d 1112 (2d Cir. 1980). Here, the defendant has produced a fabric which is virtually identical to that produced by the plaintiff. The lines, shapes and colors of the fabric designs on both parties' products are the same. The only perceivable distinctions are a slight difference in the shade of the background color and the absence, in the defendant's fabric pattern, of black lines around the bow-like figures which appear in both patterns. The background color difference can be explained by the respective manufacturing methods used by the parties. The plaintiff printed the design on a 100 percent polyester fabric using a screen-printing process. The defendant Martin Levine testified that he also used 100 percent polyester fabric but imprinted the design by way of a heat-transfer method. The absence of black lines around the figures in the defendant's pattern amounts to an insignificant distinction between the two fabric designs.

Mr. Jerry Sander, a stylist for Lauratex, testified that Lauratex purchased the design in question from an English design studio in August, 1979. The invoice from that sale was introduced into evidence at

trial. Plaintiff began to make fabric with this design in January, 1980 and obtained a copyright for the design in April, 1980. The defendant Levine testified that he came upon the same design at a fashion show in Milan, Italy in November, 1979. He purchased a piece of the fabric which contained the pattern design at that time. Levine began producing about 3,100 yards of the fabric in September, 1980.

■ Regardless of where the defendant claims he actually obtained the pattern, it is clear that the plaintiff had a valid copyright on the design, that the defendants had a reasonable opportunity to copy that design since January, 1980 when plaintiff first sold it, and that the defendants produced an identical design thereafter. From the credible evidence adduced at trial, there is substantial proof that the defendants copied plaintiff's design and thereby infringed its copyright within the meaning of 17 U.S.C. § 501. *See Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090 (2d Cir. 1977).

## II

Having determined that an infringement has occurred, the question remains as to what is an appropriate remedy. The plaintiff has asked for a permanent injunction, statutory damages in the sum of $50,000, and attorneys' fees in the sum of $10,000.

■ A permanent injunction to prevent or restrain the infringement of a copyright is provided for in 17 U.S.C. § 502 and is appropriate where money damages would not suffice. Here, the evidence shows that there exists a strong probability that the defendant will, in the future, continue to infringe plaintiff's copyright. The defendants already have sold several thousand yards of fabric containing the design. Moreover, the defendant Levine has the engraving to produce more. For these reasons, a permanent injunction will issue.

Turning to the question of money damages, the plaintiff has requested statutory damages under 17 U.S.C. § 504 (1976).[1] This section provides in part that the court may, in its discretion, award damages up to $50,000 where the plaintiff copyright owner proves that the infringement was committed wilfully. 17 U.S.C. § 504(c)(2). If the infringement is not found to be wilfull, damages of between $250 and $10,000 may be awarded. *Id.* § 504(c)(1).

■ In general, statutory damages are appropriate where, as here, the measure of actual damages is difficult to prove. *See Russell v. Price*, 612 F.2d 1123 (9th Cir. 1979), *cert. denied*, 446 U.S. 952, 100 S.Ct.

1. 17 U.S.C. § 504 provides:

  (a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

  (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

  (2) statutory damages, as provided by subsection (c).

  (b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

  (c) Statutory Damages.—

  (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $250 or more than $10,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

  (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed wilfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $50,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $100.

2919, 64 L.Ed.2d 809 (1980). The broad discretionary power given courts to make such an award serves the dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers. *Lottie Joplin Thomas Trust v. Crown Publishers*, 592 F.2d 651 (2d Cir. 1978). Actual damages to the copyright owner usually are measured in terms of lost profits. It is often difficult to speculate, however, what the plaintiff's sales would have been had there been no infringement. Here, computing plaintiff's lost profits is complicated by the lower price which defendant charged for their infringing goods. At trial, the defendant Levine testified that he charged $1.67 per yard. The plaintiff charged $2.60 per yard. It is quite possible that defendants' lower price resulted in more sales volume than would have been achieved by the plaintiff. Thus, applying defendants' sales volume to plaintiff's price in order to compute lost profits would be misleading. It is possible, on the other hand, to compute defendants' profits from the evidence presented at trial and use that as an approximate measure of plaintiff's damages. Levine testified that he produced approximately 3,100 yards of the fabric and sold it to two of plaintiff's customers. This amounts to gross profits of $5,177. The defendants did not offer any proof of expenses or costs related to these sales. This figure will provide a basis for examining an appropriate amount of statutory damages.

■ To determine what amount of statutory damages should be awarded, it must be decided whether the defendants willfully copied the plaintiff's protected fabric design. The record before me mandates an affirmative answer to this question. The defendant Levine claims that he purchased a piece of fabric containing the design in Europe in November, 1979. He did not mass produce the fabric design and sell it, however, until September, 1980, nearly nine months after the plaintiff had already established a successful market in the design and five months after the plaintiff copyrighted it. At no time did the defendant Levine attempt to copyright the design he allegedly obtained in Europe. When he finally produced it, he went directly to one of plaintiff's best customers. Under the circumstances, the defendant can hardly be called an innocent infringer. Although no specific proof has been presented to show that Levine knew of the plaintiff's copyright, it is clear that, at the very least, he acted with a reckless disregard for the rights the plaintiff had in the design.

In addition, the plaintiff presented at trial docket sheets in six copyright infringement cases brought within the last three years against Levine. Four of these cases have been settled. This provides one more indication that the business of encroaching upon others' copyrights is not unfamiliar to the defendant. For these reasons, the defendant appears to have infringed plaintiff's copyright willfully.

Accordingly, in light of the amount of actual damages shown by the plaintiff and the defendants' willful infringement, statutory damages are awarded to the plaintiff in the amount of $40,000.

■ At the conclusion of this trial, the defendant Levine moved to dismiss the action on the theory that all of his acts proved at trial were really those of the corporate defendant. As a result, it is asserted that he should not be held individually liable for any damages to plaintiff. *Cf. Walkovsky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966) (corporate veil not pierced because of absence of fraud). This argument is unavailing because of the defendant Levine's control over the corporate defendant. Levine is the sole stockholder and officer of Allton Knitting Mills, Inc. Where an individual directly causes a corporate defendant to infringe and personally participates in the acts constituting the infringement, he is jointly and severally liable for the infringement. *See Lottie Joplin Thomas Trust v. Crown Publishers*, 456 F.Supp. 531 (S.D.N.Y.1977), aff'd 592 F.2d 651 (2d Cir. 1978). Thus, both defendants are jointly and severally liable for the plaintiff's $40,000 damage award.

Finally, plaintiff is awarded attorneys' fees in the amount of $2,500. The award of these fees, in addition to statutory damages, is within the discretion of this court and serves the purpose of the Copyright Act to compensate plaintiff and deter such flagrant infringements as occurred here. *See Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908 (D.Conn.1980); *Samet & Wells, Inc. v. Shalom Toy Co., Inc.*, 429 F.Supp. 895 (S.D.N.Y.1977), *aff'd*, 578 F.2d 1369 (2d Cir. 1978).