**COLUMBIA BROADCASTING SYSTEM, INC.**

v.

**SCORPIO MUSIC DISTRIBUTORS, INC.**

Civ. A. No. 82–0444.

United States District Court, E.D. Pennsylvania.

Aug. 17, 1983.

Bancroft Haviland, Robert S. Bramson, Philadelphia, Pa., for plaintiff.

Dennis Eisman, Gregory T. Magarity, Robert C. Podwil, Mark L. Alderman, Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Plaintiff, Columbia Broadcasting System, Inc. ("CBS"), is a New York corporation which owns United States copyrights to six sound recordings, copies of which comprise the subject matter of this copyright infringement case. On or about January 1, 1981, CBS–Sony, Inc., a Japanese corporation, entered into two written agreements with Vicor Music Corporation ("Vicor"), a Philippines corporation, by which Vicor was authorized to manufacture and sell certain phonorecords exclusively in the Philippines. Plaintiff, which retained the United States copyrights as to those recordings, consented to the agreement between CBS–Sony and Vicor.

On November 2, 1981, by telegraphic notice, CBS–Sony severed its manufacturing and licensing agreements with Vicor. Prior to that date, however, on June 12, 1981, defendant Scorpio, a Pennsylvania corporation, entered into a purchase agreement with International Traders, Inc., a Nevada corporation, for several thousand phonorecords. Of the recordings which Scorpio ordered from International Traders, approximately six thousand were copies of recordings to which CBS owns copyrights.

CBS–Sony and Vicor agreed that Vicor would have sixty days following termination of the agreements within which to liquidate its stock. International Traders bought the phonorecords from Rainbow Music, Inc., a Philippines corporation, which had purchased them from Vicor before Vicor's sixty day selloff period expired.

CBS filed a complaint on February 1, 1982, alleging that without its consent, Scorpio imported phonorecords of works to which CBS owns the copyrights and thereby violated § 602 of the Copyright Act.[1]  17

---

1. Plaintiff also alleged trademark infringement and unfair competition. Those counts, however, were subsequently withdrawn.

U.S.C. § 602. After discovery, plaintiff filed the instant motion for summary judgment[2] on the ground that defendant's actions fall within the ambit of § 602 which prohibits the importation of phonorecords without consent of the copyright owner. Defendant moves to dismiss or in the alternative for summary judgment. Defendant relies on the first sale doctrine,[3] and alleges that §§ 602 and 109(a) are incongruent. Scorpio argues that, since the recordings were the subject of a valid first sale from Vicor to Rainbow Music, defendant has not infringed any of CBS' rights. Scorpio also argues that it is not an importer within the meaning of § 602 and that alleged antitrust violations based upon monopoly and conspiracy charges involved in the prosecution of this suit bar recovery by the plaintiff and provide the basis for defendant's counterclaim.

Section 602 provides, in pertinent part: (a) Importation into the United States, without the authority of the owner of the copyright under this title, of copies of phonorecords of a work that have been acquired outside of the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501.

17 U.S.C. § 602. As a matter of uncontroverted fact, the phonorecords at issue were acquired outside of the United States by International Traders and were imported without authorization from CBS, the copyright owner. Scorpio concedes this. Nonetheless, Scorpio argues it is not a proper defendant in this matter because it did not import the records from the Philippines; rather, it transacted its business with International Traders, within the United States. Since importation is the infringing act under § 602, Scorpio contends that the section does not proscribe its actions.

It is not clear whether Scorpio was the consignee of the shipment,[4] but it is undisputed that Scorpio ordered the records with full knowledge of the importation problem. Under certain circumstances, a consignee of imported merchandise may be treated as the importer. *Blumenthal Print Works v. United States,* 51 F.Supp. 208, 212 (E.D.La. 1943); *see also Hoover & Allison Co. v. Evatt,* 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1944). The evidence produced as to Scorpio's status does not permit a decisive determination of the scope of its role as an importer. However, the question whether defendant was the importer need not be resolved, in view of the law regarding vicarious and contributory infringement and the undisputed fact that International Traders was an importer.

"[I]t is well established that a suit for infringement is analogous to other tort actions and infringers are jointly and severally liable; hence plaintiff need sue only such participants as it sees fit." *Costello Publishing Co. v. Rotelle,* 670 F.2d 1035, 1043 (D.C.Cir.1981); *Klitzner Industries v. H.K. James & Co.,* 96 F.R.D. 614 (E.D.Pa.1983). Moreover, good faith, or lack thereof, is irrelevant.[5] "Intent is not a necessary element of infringement, and the copyright holder may proceed against any member of

---

**2.** Where, as here, no genuine issue of material fact is disputed, the entry of summary judgment is appropriate. *United States v. Lewisburg,* 539 F.2d 301, 305 (3d Cir.1976); Fed.R. Civ.P. 56.

**3.** When a work is the subject of a valid first sale, the distribution rights of the copyright owner are extinguished, and title passes to the buyer. *Independent News. Co. v. Williams,* 293 F.2d 510, 517 (3d Cir.1961).

**4.** Defendant's two exhibits concerning the consignee matter contain conflicting information. Machinery Leasing Co. of Beverly Hills is named as consignee on an invoice, and Scorpio is designated as consignee on the bill of lading. Defendant contends that the bill of lading

shows Scorpio as consignee for destination purposes only, rather than for purposes of importation.

**5.** An alleged copyright infringer need not have actual knowledge that the activity in which he or she participates constitutes a copyright infringement. *Universal City Studios v. Sony Corp.,* 659 F.2d 963, 975 (9th Cir.1981). Furthermore, a defendant's lack of awareness of the infringement does not insulate it from liability; however, its "innocence" may, in limited circumstances, provide a basis for reducing the damages assessed against it. *Id.* at 975; 17 U.S.C. § 504(c)(2).

the chain of distribution." *Costello,* 670 F.2d at 1044. CBS chose to file suit against Scorpio. That it did not proceed against International Traders makes this action no less valid.[6]

The major thrust of Scorpio's defense is that § 602 does not apply to the facts of the instant case whereas the restrictions of the copyright owners' exclusive distribution rights which are set forth in §§ 106(3) and 109(a) do apply. Scorpio maintains that § 109(a) supersedes any relevance § 602 otherwise might have to the case *sub judice.* Specifically, Scorpio alleges that, because the phonorecords at issue were the subject of a valid first sale from Vicor to Rainbow Music, any rights which CBS may have retained in those recordings were extinguished upon said transfer of title.[7]

■ Defendant argues that the exclusive rights of a copyright owner, including the right to distribute which is accorded by § 106(3),[8] are limited *inter alia* by § 109(a). Section 109(a) provides:

> Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.

Defendant's contentions would be more persuasive were it not for the phrase—lawfully made under this title—in § 109(a). I conclude that the section grants first sale protection to the third party buyer of copies which have been legally manufactured and sold within the United States and not to purchasers of imports such as are involved here. The protection afforded by the United States Code does not extend beyond the borders of this country unless the Code expressly states. Absent a clearly expressed legislative intent to the contrary, statutory language must be recognized as conclusive. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Thus, I cannot honor Scorpio's request that the court "decide the breadth and meaning of § 602 [by taking § 109(a) into consideration] perhaps *in a manner that circumscribes the apparent intent of Congress as reflected by the express language of section 602 and its legislative history.*"[9] (emphasis added).

Construing § 109(a) as superseding the prohibition on importation set forth in the more recently enacted § 602 would render § 602 virtually meaningless. Third party purchasers who import phonorecords could thereby circumvent the statute, in every instance, by simply buying the recordings indirectly. Moreover, declaring legal the act of purchasing from a United States importer who does not deal directly with a foreign manufacturer, but who buys recordings which have been liquidated overseas, would undermine the purpose of the statute. The copyright owner would be unable to exercise control over copies of the work which entered the American market in competition with copies lawfully manufactured and distributed under this title. This court cannot construe the statute so as to alter

---

**6.** Indeed, Scorpio had the foresight to secure a written indemnity agreement from International Traders. In a letter to Scorpio, dated July 22, 1981, International Traders stated that it "agree[s] to pay all legal fees if [sic] in the event any legal actions are brought with regard to distribution of these records."

**7.** Sale of copies of a work that has been legally manufactured with the copyright owner's consent extinguishes the copyright owner's distribution rights as to those copies. *Bobbs-Merrill Co. v. Straus,* 210 U.S. 339, 28 S.Ct. 722, 52 L.Ed. 1086 (1908); *see also Burke & Van Heusen, Inc. v. Arrow Drug, Inc.,* 233 F.Supp. 881, 884 (E.D.Pa.1964).

**8.** 17 U.S.C. § 106(3) provides:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following ... to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

**9.** Defendant's Motion to Dismiss Certain Portions of Plaintiff's Complaint or for Summary Judgment on Those Same Portions of Plaintiff's Complaint at 2.

**50**

the intent of Congress, which has set restrictions on the importation of phonorecords in order that rights of United States copyright owners can be preserved.

 The application of § 602 to the undisputed facts of this case demonstrates that Scorpio is a copyright infringer under Title 17 of the United States Code as a matter of law. Defendant makes reference to, but does not seriously argue, that the affirmative defenses pertaining to antitrust law which are set forth in its answer are relevant both to its defense against plaintiff's copyright claims and to its counterclaim.[10] However, after full discovery, defendant cannot point to any factual basis or legal authority for this defense. Accordingly, I will grant plaintiff's motion for summary judgment and deny defendant's motion to dismiss and/or for summary judgment.

---

10. Neither party has filed a motion concerning the counterclaim.