HEARST CORPORATION, a Delaware corporation; Bantam Books, Inc., a Delaware corporation; Berkeley Publishing Corporation, a Delaware corporation; Dell Publishing Company, Inc., a Delaware corporation; New American Library, a New Jersey limited partnership; Simon & Shuster, Inc., a New York corporation; and Warner Books, Inc., a New York corporation; Houghton Mifflin Company, a Massachusetts corporation, Plaintiffs,

v.

J. Ben STARK, and J. Ben Stark Books, Inc., a California corporation, Defendants.

No. C–84–4701–CAL.

United States District Court, N.D. California.

June 30, 1986.

Cooper, White & Cooper, Neil L. Shapiro, Lawrence J. Siskind, San Francisco, Cal., for plaintiffs.

Thomas E. Kotoske, Palo Alto, Cal., for defendants.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

The basic issue is whether defendants can import into the United States books which were lawfully produced abroad, if importation conflicts with plaintiffs' United States copyrights. This is the first reported case seeking to enjoin the importation of books based on 17 U.S.C. § 602. It involves balancing the rights of free speech guaranteed by the First Amendment with the rights created by Congress in the federal copyright statutes under the authority of Art. I, § 8 of the Constitution.[1]

The case is now before the court on cross motions for summary judgment. The parties agree, and the court concurs, that there are no genuine issues of material fact on the issues discussed and decided below.[2] The court has reviewed the moving and opposing papers, the briefs and arguments of counsel, the record, and the applicable authorities, and concludes that partial summary judgment should be entered in favor of plaintiffs and against defendants.

### I.

The case concerns the copyrights, licensing, production, importation and sale of eighteen titles.[3] United States copyrights were obtained on each of those titles. The authors entered into agreements with plaintiffs, who are the publishers of the United States editions. Under those agreements, plaintiffs became the exclusive United States owners of those copyrights.

Those titles were also published lawfully in the United Kingdom. That is, printing and distribution of those titles in the United Kingdom were done under rights granted to the United Kingdom publishers by the holders of those rights. The publications in the United Kingdom did not infringe the rights of plaintiffs as the exclusive owners of the United States copyrights.

Those books were then sold by the United Kingdom publishers to a wholesaler in the United Kingdom. The wholesaler in turn sold the books to these defendants, who imported them into the United States and are selling them to United States customers.

Defendants and the *amici curiae* argue that this case involves only books which are "unavailable" in the United States in U.S. editions. Defendants claim that they import only books which were not printed in the United States, which are out of print, or which are otherwise unavailable in the United States. And the *amici curiae* argue in support of the right of the American

---

1. Article I, § 8 of the Constitution provides that: "The Congress shall have Power ... to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writing and Discoveries."

2. Plaintiffs submitted a statement of undisputed facts. Defendants made no objections to those undisputed facts, except as to four books which are discussed below. Defendants of course disagree with the conclusions which plaintiffs draw from those undisputed facts.

3. *Earthly Powers, The Kingdom, The Oxford American Dictionary, The Sea Leopard, The Golden Spiders, The F-Plan Diet, The Book of Frank Herbert, License Renewed, The Sirens of Titan, A Wrinkle in Time, Ramona The Pest, The Deep Range, Hungry As The Sea, Almost Human, Life, The Universe and Everything, Dark Crusade, Innocent Blood,* and *The Adversary.*

public to have access to books which are otherwise unavailable in the United States. However, the record is not clear whether these eighteen titles are or are not available in the United States other than through defendants' importations. This court therefore considers the case as dealing both with titles that are and are not available in United States editions. The court does not base its decisions below upon that claimed distinction and hence the factual dispute, if any, is not material to this case.

## II.

Plaintiffs bring this action contending that they own the exclusive rights to the distribution of these titles in the United States, and that defendants are liable, for both damages and injunctive prohibition, for importing these titles into the United States, by virtue of 17 U.S.C. § 602. Defendants deny that § 602 precludes defendants' importations and further assert that even if section 602 does bar their activities, that statute is unconstitutional as a violation of their First Amendment rights. Defendants also raise additional affirmative defenses which are discussed below.

The parties have made cross motions for summary judgment, which are now before the court for decision. And the court has entertained *amicus curiae* briefs by the American Booksellers Association, Inc. and the Northern California Booksellers, Inc., in support of defendants.

## III.

Defendants have raised two standing issues which must be considered before examining the basic issues.

■ First, defendants contend that plaintiff New American Library does not have standing with respect to two of the titles [4]

because the U.S. copyrights to those titles were assigned as security to a financial institution. However, the record is clear that the assignments were only as security for a loan, and that there has been no foreclosure on the security of those copyrights. The assignments of the copyrights for security purposes did not divest New American Library of its rights to enforce the copyrights. 3 *Nimmer on Copyright,* § 12.02, 12–29. *See Pantone v. A.I. Friedman, Inc.,* 294 F.Supp. 545, 551–2 (S.D.N.Y.1968).

■ Second, defendants argue that the authors of the titles, rather than these plaintiffs, are the only ones who have standing to enforce the rights at issue here. They argue that under the license agreements and under sections 109 and 201 of Title 17, the authors remain the "owners" of the copyrights, and that these plaintiffs are mere licensees who have only a lesser bundle of rights to enforce.[5]

However, the court believes that defendants' arguments are inapplicable for two reasons. First, the court has reviewed the license agreements, and those agreements provide that the authors assigned all of their rights to plaintiffs with respect to the United States copyrights. Second, the agreements between the authors and plaintiffs were grants of exclusive rights. And 17 U.S.C. § 201(d)(2) provides that the owner of an exclusive right, in this case these plaintiffs, is entitled to all the protections and remedies accorded to the original copyright owner. Therefore, these plaintiffs are entitled to the same protections and to invoke the same remedies as the authors.

## IV.

■ Defendants challenge the validity of four of the copyrights.[6] Their challenge is based upon defendants' assertion that those titles were first published more than

---

**4.** *The Deep Range* and *Hungry As The Sea.*

**5.** In addition, the *amici curiae* argue that certain authorities upholding copyrights should not apply here, because these authors did receive the benefits of the first publications of their works.

**6.** *Innocent Blood, The Adversary, The Oxford American Dictionary,* and *Life, The Universe and Everything.*

three months prior to the registration of the copyrights. *See* 17 U.S.C. § 412. Plaintiffs have established a factual record showing the issuance of the certificates of copyright registration as to each of the titles. The copyright registration certificate is *prima facie* proof of the validity of the copyright. 17 U.S.C. § 410(c). The record has therefore shifted to defendants the burden of going forward with the evidence to challenge the validity of those registrations.

However, the record demonstrates that defendants have not satisfied their burden of showing a genuine issue of material fact. Defendants' claimed record is an exhibit to one of their briefs, but the exhibit does not have an accurate identification or proper authentication. In reviewing the exhibit, the court is unable to determine what it purports to represent, what its authentication is, or what facts it is meant to convey. Defendants also requested plaintiffs to admit the accuracy of the dates alleged by defendants; but plaintiffs objected to defendants' request for admissions, and the request was not pursued further. There is therefore no competent evidence before the court to support defendants' argument about the four titles. Further, even assuming the identification and authentication of the exhibit, it appears that some of the information is incorrect. That is, the exhibit does not agree with all of the factual arguments made in defendants' briefs.

The court concludes that plaintiffs have made the necessary factual showing to support the validity of all eighteen of the titles, and that defendants have not sustained their burden under Rule 56(e) of the Federal Rules of Civil Procedure to create a genuine issue of material fact as to the validity of the four questioned copyrights.

■ It is also important to note the legal significance of defendants' challenge, even if it were established in the record. First,

a publication date prior to that stated in the application for copyright registration does not necessarily invalidate the registration. Misstatements or errors in a registration application, unless by fraud, do not invalidate the copyright or render the registration certificate incapable of supporting an infringement action. 2, *Nimmer On Copyrights*, § 7.20 7–148.1 (1985). Second, even if defendants' arguments were correct factually and legally, they would only impact the amount of damages which plaintiffs could be awarded. That is, under section 412 of Title 17, plaintiffs might be precluded from recovering statutory damages or attorneys fees for infringement of these particular works. However, plaintiffs would still be entitled to an award of actual damages, defendants' profits, and injunctive relief, even if the initial certificates of registration were not within three months of publication.

## V.

Plaintiffs' action is based on 17 U.S.C. § 602. Defendants have raised several defenses to the application of that statute, primarily that: (1) the statute does not apply to defendants' activities, (2) defendants' activities are protected by the "first sale" rule, and (3) if section 602 does apply, it is unconstitutional. Each of these points will be discussed in order.

### A. The Application of 17 U.S.C. Section 602.

■ In section 106, the Copyright Act gives to the owner of a copyright the exclusive rights to do certain things, including to authorize the distribution of copies of the copyrighted work.[7]

Section 602 was a later amendment to the Act and became effective in 1978. It deals with the subject of importation into the United States of copyrighted material. In relevant part, section 602(a) provides as follows:

7. Section 106(3) provides, in pertinent part:
   ... [T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following ... to distribute copies

... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

"Importation into the United States, without the authority of the owner of copyright ... of copies ... of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies ... under section 106 actionable under section 501...."

Section 501 provides that anyone who violates any of the exclusive rights of the copyright owner as provided by section 106, or who imports copies into the United States in violation of section 602, is an infringer of the copyright.

It is apparent from the legislative history of section 602 (*e.g.*, Notes of Comm. on the Judiciary, House Report No. 94–1476) that section 602 was passed by Congress to address two situations. One was piracy; that is, the importation of unlawfully produced items. The second was the importation of items which were lawfully produced abroad, but which would conflict with United States copyrights when imported into the United States.

The language of the statute applies to the admitted facts of this case. That is, defendants are importing into the United States, without the authority of the owners of the U.S. copyrights, copies of works that defendants acquired outside the United States. By such importation, defendants have infringed the exclusive U.S. rights of plaintiffs to distribute copies of those works.

This is the first reported case applying section 602 to the importation of books, and defendants argue that the section does not or should not apply to books. However, it is apparent from the words of the statute "copies," "work," and "copyright," that the section can apply to books as well as to other forms of artistic expression. Books are clearly a subject of the Copyright Act generally. And there is nothing in the legislative history to suggest that Congress intended to exclude books from that section of the Act.

Defendants argue that section 602 is simply an adjunct of section 601, dealing with the place of manufacture of a work; that is, that the section should apply only to piracy cases. However, this court believes, from both the language of section 602 and its legislative history, that the statute was also meant to cover the importation of books lawfully made elsewhere.

Defendants make several arguments regarding the legislative history of section 602. They argue that Congress' intent was equivocal, that the legislative result was unwise, and that the section should be given the narrowest possible interpretation. This court cannot, of course, pass on the wisdom of the legislation; that is solely the function of Congress. "Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). *See, e.g., Adams v. Morton*, 581 F.2d 1314 (9th Cir.1978). The court believes that the language of section 602 clearly provides that it is an infringement of United States copyrights for books that have been acquired outside the United States, however lawfully, to be imported into the United States. See *e.g. Nintendo, Inc. v. Elcon Industries, Inc.*, 564 F.Supp. 937, 943–44 (E.D.Mich.1982). And even if the court were to look behind the language of the statute to examine the legislative intent, the court is of the opinion that the legislative intent is consistent with the language of the statute.

Defendants and the *amici curiae* argue that section 602 should not be applied to books which are out of print or otherwise unavailable in the United States. They argue that this interpretation is necessary in order to avoid conflict with the First Amendment.[8] However, no such limitation

---

8. The *amici curiae* contend that if a book is available in the United States, First Amendment interests would not be implicated, because the

public has access to the information; however, if the book is unavailable in the United States,

appears from the language of section 602 or from its legislative history. The test under the statute is simply whether there has been an importation of a copy of a work which infringes a copyright in the United States.[9]

### B. *The First Sale Rule.*

■ Defendants contend that the so called "first sale rule" precludes the application of section 602 here. That rule is contained in 17 U.S.C. § 109(a) and provides in material part that notwithstanding section 106, the owner of a particular copy of a work which is lawfully made may sell that copy without the authority of the owner of the copyright.

Initially, it is questionable whether section 109 has any application to liability under section 602. That is, the language of section 109 provides an exemption from liability under section 106. Section 602 is a separate statute which was passed after section 109. Section 602 does refer to section 106, but it appears to create rights and liabilities in addition to those in section 106. And as discussed above, it is apparent from both the language of section 602 and the intent of Congress that the purpose of section 602 was to preclude the importation of copyrighted works lawfully produced elsewhere.

However, if section 602 is modified by section 109, that modification would not apply to defendants' activities here. Section 109 only applies to the resale of "a particular copy" of a work. Here, defendants are importing large quantities of titles, which they acquired from wholesale distribution channels, for the purpose of multiple resales in the United States. Even if section 109 did permit booksellers to sell a particular copy of a copyrighted work, that section would not authorize the wholesale importation and redistribution of multiple copyrighted works in conflict with section 602. The singular language of section 109 contrasts with the pluralistic language of section 602, which refers to importation, copies, and distribution.

The cases discussing the relationship between section 602 and section 109 have not produced a clear-cut rule, but have interpreted the "first sale" doctrine narrowly.

In *Columbia Broadcasting System, Inc. v. Scorpio Music Distributors, Inc.,* 569 F.Supp. 47 (E.D.Pa.1983), the owner of phonograph copyrights sued an importer of phonorecords lawfully manufactured in the Philippines, alleging that the importation without consent violated plaintiff's rights under section 602. Plaintiff had authorized a foreign corporation to manufacture and distribute those phonorecords, and the foreign corporation had sold the phonorecords to a United States corporation which in turn sold them to defendant. Defendant contended that because the phonorecords were subject to a "first sale," section 602 did not apply to defendant. The court rejected defendant's argument, and stated that section 109 "grants first sale protection to the third party buyer of copies which have been legally manufactured and sold within the United States and not to purchasers of imports such as are involved here." *Id.* at 49. In so ruling, the court restricted the scope of the "first sale" doctrine to situations where the copies have been legally manufactured and sold within the United States, not abroad. The court specifically stated that, "[t]he protection afforded by the United States Code does not extend beyond the borders of this country unless the Code expressly states." *Id.*

In *Nintendo of America, Inc., v. Elcon Industries, Inc.,* 564 F.Supp. 937 (E.D. Mich.1982), plaintiff held the exclusive li-

---

the First Amendment should bar the application of section 602.

9. There has not been an adequate factual showing by defendants for this court to consider the defendants' arguments concerning the availability of these books and the public's First Amendment rights of access to books out of print. That is, defendants have shown no factual record that the titles involved here were in fact out of print or unavailable in the United States. The most that has been shown is a general statement of intention by defendants, which is equivocal in the record, to import books which defendants believe were out of print or were otherwise unavailable in the United States.

cense to sell certain video games in the United States. Defendant purchased copyrighted circuit boards for the games from American companies, which had purchased them from a Japanese manufacturer who was licensed to sell and manufacture the game in Japan. The court found that the importation of the circuit boards constituted an infringement of plaintiff's copyright. The court therefore reached the same result as *Scorpio*, but it did not consider the scope of the "first sale" rule at issue here.

*Cosmair, Inc. v. Dynamite Enterprises, Inc.*, 226 U.S.P.Q. 344 (S.D.Fla.1985) [Available on WESTLAW, DCTU database], questioned the interpretation of sections 602 and 109 in *Scorpio*. In *Cosmair*, a trustee licensed to distribute fragrance products in the United States under the POLO and LAUREN trademarks, sought to enjoin the importation and distribution of POLO and LAUREN fragrances into the United States by defendants who were the consignees of the products. Plaintiff alleged that the importation of the fragrance products without plaintiff's consent violated section 602 of the Act. Defendant argued, and the court apparently agreed, that because the fragrance products were manufactured and sold in the United States, section 109 could operate as a limit on section 602.[10] Based on that determination, the court held that plaintiff did not establish a likelihood of success on the merits. In light of the factual differences among *Cosmair, Scorpio,* and this case, the *Cosmair* holding is not conclusive here.

Based upon the statutes, the legislative intent and the cases, this court concludes that section 109 does not limit the application of section 602 where defendants make wholesale importations into the United States of copyrighted materials manufactured outside this country. While the "first sale" defense remains in certain factual circumstances, it provides no defense to defendants for their importations here.

### C. *Section 602 and the First Amendment.*

■ Defendants and the *amici curiae* argue that if section 602 is applied to prohibit defendants' importations, it would be unconstitutional under the First Amendment. As discussed above, they argue that section 602 should not apply to books at all, should not bar any books lawfully produced abroad, and should not apply to books which are out of print or are otherwise unavailable in the United States. This court has already addressed those arguments in the context of the language of section 602 and its legislative history. Some further discussion is necessary in the context of defendants' constitutional arguments.

The constitutional arguments raise the question of the balance to be struck between rights under the First Amendment and rights under the Copyright Act, which was enacted by Congress under the authority of Article I, Section 8 of the Constitution. In striking that balance here, this court must of course look to the decisions of the United States Supreme Court. This court has been unable to find any case in which the U.S. Supreme Court, or indeed any other federal court, has invalidated any section of the Copyright Act on First Amendment grounds. In addition, the court has the guidance of two recent U.S. Supreme Court decisions which, although not involving the issues here, discussed the relationship between the Copyright Act and the First Amendment.

In *Harper & Row Publishers, Inc. v. Nation Enterprises, Inc.*, 471 U.S. 539, 105 S.Ct. 2218, 2223, 85 L.Ed.2d 588 (1985) ("Harper"), the Supreme Court reaffirmed that the purpose behind the Copyright Act is "to increase and not to impede the harvest of knowledge." In *Harper*, the Court held that a magazine's use of excerpts from former President Ford's unpublished memoirs was not a "fair use" within the meaning of section 107 of the Copyright

---

**10.** Another factual difference is that the court in *Cosmair* determined that "defendants [had] raised serious questions as to the validity of the copyright" in question, thereby casting doubt on the applicability of section 602 in that case. *Id.* at 348.

Act. The Court discussed the purpose behind the Copyright Act, and noted that the Act was "intended to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Id. citing Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984) (*"Sony"*).

In *Sony* the Court noted that the copyright owner's statutory monopoly "reflects a balance of competing claims upon the public interest ... the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good." *Sony, Id.* at 431–432, 104 S.Ct. at 783–784 *citing Fox Film Corp. v. Doyal*, 286 U.S. 123, 127, 52 S.Ct. 546, 547, 76 L.Ed. 1010 (1932).

The copyright clause of the Constitution provides that it is Congress' function to define the scope of the limited monopoly to be granted to authors in order to give the public access to creative works. The Supreme Court has noted that the balancing task begins with Congress. *Sony*, 464 U.S. at 429, 104 S.Ct. at 782. The Court said in *Sony* that this task required that Congress strike "a difficult balance between the interests of authors and inventors in the control and exploitation of their writings and discoveries on the one hand, and society's competing interest in the free flow of ideas, information and commerce on the other hand ..." *Id.* As Professor Nimmer has stated, this balancing process must begin with the recognition that, on the one hand, "economic encouragement for creators must be preserved and the privacy of unpublished works recognized." On the other hand, "freedom of speech requires the preservation of a meaningful public or democratic dialogue ..." 1 *Nimmer On Copyright*, § 1.10[B][2]. Furthermore, the fundamental basis for preserving this balance lies in the notion that "while copyright may not be claimed in ideas, it may be claimed in 'the expression of the

idea'" *Id. See e.g. Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954).

By prohibiting the unauthorized importation of works, section 602 preserves the copyright owners' right to control their copyrighted works. Congress and the Supreme Court have given the copyright owners the prerogative to determine when or whether a particular work will be published, re-released or removed from print. As the Court in *Harper* stated:

> In its commercial guise ... an author's right to choose when he will publish is no less deserving of protection. The period encompassing the work's initiation, its preparation, and its grooming for public dissemination is a crucial one for any literary endeavor. The Copyright Act ... echoes the common law's concern that the author or copyright owner retain control throughout this critical stage.

105 S.Ct. at 2228.

While the Court in *Harper* was discussing the "fair use" doctrine and the right of first publication, the same reasoning applies here. Defendants' unauthorized importations have an undermining effect on the copyright owners' control over the public dissemination of the copyrighted works. By prohibiting the unauthorized importation, section 602 enhances the owners' rights to "retain creative control."

Congress has already attempted to strike the proper balance in passing section 602, and this court does not believe that the balance offends the Constitution. This court concludes that section 602 furthers the purposes of the Copyright Act to encourage creative efforts by assuring a fair financial return and by protecting copyright owners from dilution of the copyrights resulting from unauthorized importation of the works. The court holds that neither section 602 nor its application to this case violate the First Amendment. Rather, they further the means of free expression and the ultimate objectives of the First Amendment.[11]

---

**11.** The *amici curiae* also argue that because of First Amendment considerations, a defendant should not be liable under section 602 unless he had actual notice of an owner's claims. The

## VI.

Plaintiffs seek a declaration that defendants' infringements were willful and in bad faith. If they were willful, plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c)(2). And if the infringements were in bad faith, plaintiffs are entitled to attorneys fees. 17 U.S.C. § 505. *Cooling Systems & Flexibles v. Stuart Radiator*, 777 F.2d 485, 493 (9th Cir.1985).

Plaintiffs argue from the record that defendants had prior knowledge of the statutory prohibition against importing books in violation of the Copyright Act, and that defendants received objections from certain publishing companies before they imported some of the titles at issue here. Defendants contend that there cannot be a finding of willfulness because: they did not have sufficient knowledge, the importation of books under section 602 presents a case of first impression, and there was no adequate method for defendants to determine the copyright and licensing status of the titles in the United States.[12]

Since this is the first reported case involving the application of section 602 to the importation of books, there is no authority on the standard for a finding of willfulness in this context. However, willfulness arises from section 504(c)(2) of the Act, and several cases have defined the standard in different contexts under the Act.

For purposes of the copyright statutes generally, "willfully" usually means "with knowledge." 3 *Nimmer On Copyright*, § 14.04[B][3] at 14–27, 14–28 (1984). Professor Nimmer has stated:

> It seems clear that as here used "willfully" means with knowledge that the defendant's conduct constitutes copyright infringement. Otherwise, there would be no point in providing specially for the

reduction of minimum awards in the case of innocent infringement since any infringement which was nonwillful would necessarily be innocent.

*Id.* at 14–28 (footnotes omitted).

However, courts have found an infringement to be willful where there was no proof of *actual* knowledge. In *Fallaci v. The New Gazette Corp.*, 568 F.Supp. 1172 (S.D.N.Y.1983), the court found that plaintiff had established a *prima facie* case of willful infringement where defendant "was or should have been" aware that its activities were infringing. *Id.* at 1173. In *Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F.Supp. 730, 733 (S.D.N.Y.1981), the court found that there was a willful infringement and stated that, "[A]lthough no specific proof has been presented to show that Levine knew of the plaintiff's copyright, it is clear that, at the very least, he acted with a reckless disregard for the rights the plaintiff had in the design." In a recent case, *Wow & Flutter Music v. Len's Tom Jones Tavern, Inc.*, 606 F.Supp. 554, 556 (W.D.N.Y.1985), the court held that a plaintiff's burden to establish willfulness can be met by "showing that defendants should have known their conduct was infringing or acted in reckless disregard of plaintiff's rights."

In *Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 975 (9th Cir. 1981), the Ninth Circuit noted that it is not necessary that an infringer have actual knowledge that his conduct constitutes a copyright infringement. The court stated "it is only necessary that a copyright defendant have knowledge of the infringing *activity*." *Id.* (emphasis in original). Regardless of the standard applied, however, "a copyright defendant's "innocence" does

cases which the *amici curiae* cite, however, deal only with whether a bookseller should be charged with knowledge of the *contents* of material, not with a bookseller's knowledge of the rights of others in the volume itself. Actual notice is not an element required to find a violation of section 602. And because of the undisputed facts discussed in the next section, defendants did have a sufficient degree of the

awareness of the rights of the licensee publishers.

12. Defendants also contend that there is no means for them to determine whether the titles were out of print or otherwise unavailable in the United States. For the reasons discussed below, the court believes that this contention is not relevant.

not absolve him of liability; it only affects the remedies available." *Id.*

The determination of willfulness under the applicable standards is generally a question of fact for the jury. The question now before this court is therefore whether there are such undisputed facts in the record as to make this issue now appropriate for summary judgment.

Plaintiffs argue that defendants' familiarity with copyright law raises an inference that they had knowledge that their activities were infringing. Plaintiff cites defendant's deposition testimony that defendants had read section 602 and that defendants had received legal advice on their importation activities. Defendants also received a letter from a publishing house attorney in 1983 which charged that defendants' importation of certain books constituted copyright infringement.

While the record discloses that defendants' importation has been extensive, and that they may have been on notice that their importations might contravene the Copyright Act, the court is reluctant to find on summary judgment that there has been a willful infringement of section 602. This case raises questions of first impression, such as the applications of section 602 and section 109 to the importation of books. While defendants had sufficient knowledge of copyright law to conclude that they should consult an attorney about their importations, the application of section 602 had not then been established. And Professor Nimmer has stated that, " ... one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not "willful" for these purposes." 3 *Nimmer On Copyright*, § 14.-04[B][3] at 14–28 (1984). On the present record, the court cannot now find that defendants "were or should have been aware" that their activities were infringing, *Fallaci*. 568 F.Supp. at 1173, or that they acted in "reckless disregard" of plaintiff's rights. *Wow & Flutter Music*, 606 F.Supp. at 556.

## VII.

■ Defendants argue that this action is barred by laches, estoppel, and the statute of limitations. Most of defendants' arguments are based on the single fact that defendants have been importing books from the United Kingdom and selling them in the United States for many years. However, defendants' conclusion that this fact establishes the defenses of laches, estoppel and the statute of limitations is unsupported by the record. Indeed, the record affirmatively demonstrates, without any genuine issue of material fact, that the conduct complained of in this action did occur within the relevant three year statute of limitations.[13] 17 U.S.C. § 507(b). The record establishes the dates of defendants' importation of each of the titles at issue here. All of those dates are within the statute of limitations. And the record does not establish any basis for findings of laches or estoppel.[14] Section 602, the basis for this action, did not even become effective until 1978.

Further, there is authority that mere delay in pursuing a claim is not a bar against a defendant who knew of plaintiffs' asserted rights, or against a deliberate infringer. 3 *Nimmer on Copyrights*, section 12.06 (1985). As discussed above, whether defendants' conduct is or is not deemed willful, defendants certainly knew of plaintiffs' asserted rights and were advised of them.

## VIII.

■ Finally, defendants make arguments which are based on antitrust princi-

---

13. Some of defendants' arguments are based upon early *publication* dates stated in some catalogs. However, even accepting the accuracy of those dates, they do not pertain to when defendant *imported* those books into the United States, which is the activity which would give rise to laches, estoppel or the statute of limitation.

14. In order to establish estoppel, defendants would be required to show four elements, all of which are missing in this case. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir.1960).

ples. Defendants' arguments are founded upon a consent judgment executed by the parties and entered by the court in 1976 in *U.S. v. Addison & Wesley Publishing Co.,* 1976–2 Trade Cases ¶ 61,225 (S.D.N.Y. 1976). This court has reviewed the record of that proceeding pursuant to defendants' request for judicial notice. The court does not believe that the consent judgment provides a defense here for two reasons.[15]

First, the consent decree was entered in 1976. However, section 602, the statute at issue here, became effective in 1978. Even if, as defendants contend, there were some inconsistencies between the consent judgment and section 602, it is the act of Congress and not the agreement of the parties (even though one of the parties was the United States Antitrust Division) which must control. This is particularly true where the statute did not become effective until two years after the consent decree. It is the legislative branch of the government which has the power to create rights and duties under the copyright laws, and its passage of section 602 must be superior to an earlier consent decree even if inconsistent.

Second, the court does not believe that the consent decree is really inconsistent with section 602. The *U.S. v. Addison & Wesley* action, and the consent judgment which resulted, were based on alleged antitrust activities which are not the subject of section 602. That is, the action concerned competitors entering into agreements among themselves to divide territories. Horizontal territorial agreements among competitors were both the alleged violations and the subjects of the consent decree. Section 602 does not purport to permit such agreements. It simply gives to the owner of a copyright the right to enforce the copyright against the importation of copyrighted material by others. Further, the consent judgment itself stated that plaintiffs could enforce their rights under the copyright laws of any country. *U.S. v. Addison-Wesley Publishing Co.,* 1976–2 Trade Cases at 70,642.

This court therefore concludes that *U.S. v. Addison & Wesley* consent judgment does not establish a defense to plaintiffs' claims, and indeed does not even establish a *prima facie* defense which would shift to plaintiffs the burden of going forward with the evidence.[16]

█ Defendants have also made an oblique attack on plaintiffs' exclusive license agreements, apparently contending that they violate the antitrust laws. That attack appears to be again grounded on the *U.S. v. Addison & Wesley* consent judgment. Defendants appear to be seeking, albeit indirectly, enforcement by this court of that consent judgment. However, defendants have established no factual record and have made no valid legal argument, to support their contentions.[17] The court must therefore look to the provisions of the Copyright Act. The language of the Act appears to allow exclusive licenses. The term "exclusive licenses" is used in the Act's definition section, 17 U.S.C. § 101. And a transfer of ownership by the copyright holder under 17 U.S.C. § 106(3), may be an exclusive license under section 101.

## IX.

For the reasons discussed, the court concludes that there are no genuine issues of material fact regarding the rights and duties resolved above, that plaintiffs' motion for summary judgment is granted in part, that defendants' motion for summary judgment is denied, and that plaintiffs are

---

**15.** Only some of these parties-plaintiff were parties to the consent decree. Therefore, even if defendants' arguments were accepted, they would apply only to certain of the plaintiffs.

**16.** 15 U.S.C. § 16(a) also provides that such stipulated judgment may not be used as *prima facie* evidence.

**17.** Even though defendants have failed to establish a *prima facie* case based on plaintiffs' license agreements, must this court nevertheless permit the defense, merely because it has been asserted, to bar summary judgment for plaintiffs? The court does not believe so because of Fed.R.Civ.P. Rule 56(e). Defendants have not raised a genuine issue of material fact in support of this claimed defense.

entitled to judgment against defendants as follows:

(1) Defendants violated 17 U.S.C. § 602, and thereby infringed the copyrights of plaintiffs, in the titles enumerated in footnote No. 3 above;

(2) Plaintiffs are entitled to injunctive relief to prevent further infringements; and

(3) Plaintiffs are entitled to actual damages for those infringements.

Plaintiffs' motion for summary judgment on the issues of willfulness and bad faith are denied.

The trial of this case shall therefore be limited to the issues of the amount of actual damages, willfulness, and bad faith.

A status conference will be held on July 25, 1986, at 11:00 o'clock to schedule the further proceedings for discovery, pretrial, and trial of those issues.