**John DIAMOND, Plaintiff-Appellant,**

v.

**AM–LAW PUBLISHING CORP., Jay Kriegel, Steven Brill, Jill Abramson, Kitty Kelley, Defendants-Appellees.**

**No. 1342, Docket 84–7136.**

United States Court of Appeals, Second Circuit.

Argued June 11, 1984.

Decided Sept. 10, 1984.

Richard M. Sharfman, Sharfman, Shanman, Poret & Siviglia, New York City, for plaintiff-appellant.

Floyd Abrams, New York City (Edward P. Krugman, Cahill Gordon & Reindell,

New York City, of counsel), for defendants-appellees.

Before FRIENDLY, VAN GRAAFEILAND and WINTER, Circuit Judges.

WINTER, Circuit Judge.

John Diamond appeals from a grant of summary judgment dismissing his copyright infringement claim, from the award of attorney's fees to the defendants on that claim, and from the dismissal of his state law claims.

We affirm.

## BACKGROUND

This dispute, involving a magazine specializing in matters of interest to the legal community, arises out of a series of articles and letters. In order to reduce the text of this opinion to a size commensurate with the nature of the legal issue raised, we set forth the relevant materials in their entirety at appropriate places in the margin.

John Diamond is an attorney who practices law in New York City. *The American Lawyer*, a monthly magazine owned by Am-Law Publishing Corp., ran a short article entitled "Kitty Claws Diamond" in its August, 1982 edition.[1] The article, written by staff reporter Jill Abramson, concerned a dispute between Diamond and author Kitty Kelley over a $1,608.50 legal fee. The article characterized Diamond's efforts to collect the disputed fee as "persistent" and stated that Kelley had filed a grievance against Diamond with the New York bar association.

Following publication of the article, Diamond wrote to the editor of *The American Lawyer*, Steven Brill, with whom he appears to have had earlier unhappy dealings, denying that a grievance had been filed and demanding a retraction and apology.[2] Brill wrote to Diamond and invited him to write

1.       KITTY CLAWS DIAMOND

Author Kitty Kelley, queen of the unauthorized biography (her Jackie O. and Liz Taylor bios have both been best-sellers), is in the midst of a legal dispute. This time, however, the problem isn't one of her unwilling subjects but John Diamond, the former general counsel of Simon & Schuster, which in 1981 published Kelley's *Elizabeth Taylor: The Last Star.*

In April Diamond, who is now of counsel at New York's Townsend Rabinowitz Panteleoni & Valente, billed Kelley $1,608.50 for work involving the sale of the television rights to the Taylor biography. She refused to pay, maintaining that she never authorized her former agent to hire Diamond. The agent, Lucianne Goldberg, says she had the right to hire Diamond. "She's being highly unprofessional," says Goldberg. "This is not a jaw-breaking legal bill ... just postage money."

Nevertheless, Diamond is persistent. In May he sent Kelley a "dunning" letter, later that month and in June he left six messages on her answering machine, threatening legal action. One of them went as follows, she says: "Hi, Kitty. This is John Diamond. I wonder if you'll ever return my call or pay my bill. The courts of New York will be more than helpful."

Diamond has yet to sue, but in June Kelley took action herself, filing a grievance complaint against Diamond with the New York bar association. "He's treating me like some kind of deadbeat," she wails. "I absolutely hate lawyers."

Diamond is reluctant to discuss the dispute. "There is no legal action pending," he says. "If there is a fee dispute with a client, you don't want to comment on it."

2.                                July 29, 1982

Dear Mr. Brill:

As a follow up to our conversation of yesterday, I now have had occasion to see the article concerning me on page 18 of the August 1982 issue of the *American Lawyer*.

Apart from Miss Kelley's misquoting messages left on her answering machine and the obvious error concerning the characterization of my representation of Miss Kelley, I was shocked to see your statement that there is a grievance filed against me in connection with this matter. Had you taken the trouble to have verified that fact you would have discovered that there are no grievances pending against me.

To make such an accusation against me in print constitutes not only irresponsible journalism but questionable conduct by fellow attorneys.

I hereby demand a retraction equal in prominence to the offensive article and a letter of apology to me, copies of which are to be circulated to all of your subscribers. Failing receipt of your immediate assurance that these steps will be taken by you, I will forthwith institute legal proceedings against all parties responsible for the publication of these defamatory statements.

Very truly yours,
/s/ John D. Diamond.

a letter to the magazine stating that no grievance had been filed.[3] Diamond thereupon wrote another letter to Brill on August 5, 1982, addressing the grievance issue and criticizing the reportorial conduct of *The American Lawyer*.[4] This letter

3.                       August 4, 1982

Dear John:

I have your (certified) letter of July 29.

I'm surprised to see that you were "shocked to see" our statement that a grievance had been filed; for Jill told you that Kelly [sic] said that when she interviewed you.

Obviously we could not verify the grievance since the Bar panel keeps such things secret; we could only verify that Kelly said she filed one— which we did by having our fact-checkers check that with Kelly a second time.

If you checked with the Bar and found that there is no grievance, you (as the only person privy to that information authorized to release it) should have told us. If you *now* know it, I'd be happy to print a prominent letter from you saying so.

Besides, anyone can file a grievance; the existence of one says nothing one way or the other.

Since you are a competent lawyer with experience in libel law you obviously understand that your threat of a libel suit under these circumstances is frivolous and an abuse of your license. But since you're a friend and probably wrote your letter out of pique at a friend, I'll ignore it for now.

Why not simply send us a letter saying no grievance has been filed?

Best regards.

           Sincerely,
           /s/   Steven Brill,
           Editor

4.          .            August 5, 1982

Dear Mr. Brill:

In your August 4 letter, you requested my letter setting forth the true facts concerning an untrue article which libels me in the August 1982 issue of The American Lawyer. You are authorized to publish this letter but only in its entirety. Among several untrue allegations in this article, your publication falsely states that a grievance against me has been pending with the New York bar association since June 1982.

Your reply to my letter of July 29, 1982 is unresponsive to my requests for your publication of a retraction and a letter of apology to me, copies of which are to be mailed to all subscribers of The American Lawyer. Neither is acknowledged in your August 4 letter. The conclusion which I draw from your failure to discuss these matters is that you intend to take neither of these actions.

While the various Departmental Disciplinary Committees in the State of New York do not discuss the pendency of complaints against attorneys, there certainly were other means whereby you could have verified whether Ms. Kelley had or had not filed a grievance against me. For example, you could have obtained a copy of the purported filing from Ms. Kelley. You also could have reported this matter in less absolute terms.

Your researcher's recollection is wrong. She never told me anything about Ms. Kelley's purported filing of a grievance. Had she done so, I would have advised you of the situation in my letter of June 10, 1982, in which I called your attention to other defamatory statements which your reporter claimed Ms. Kelley had made to her concerning me.

At the time we spoke on July 28, 1982, I did not know that your article described the purported filing of Ms. Kelley's grievance against me. After reading the libelous article for the first time, I checked with several agencies and learned that, as of July 29, 1982, no such grievance had been filed.

I have been admitted to practice law in the State of New York since 1964. No grievance has ever been filed against me. If anyone were to file a grievance against me, even an unjustified grievance, I would take that as a serious affront to my professional reputation upon which I place great value. Your irresponsible article creates the impression that a grievance was filed against me in early June and is still pending. As you know, I am establishing my own practice. Any member of the Bar, who would otherwise refer matters to me would be deterred from doing so since they would incorrectly assume that the grievance you reported was of substance since it is reported as still pending after two months.

In your August 4 letter you state "Besides, anyone can file a grievance; the existence of one says nothing one way or the other." This admission by you that the libel published by you is not newsworthy compels me to conclude that your motive in publishing this material was to cause me injury. This is quite surprising in view of your expression of friendship towards me in the same letter.

I compliment your candor in admitting that as regards a grievance purportedly filed against me I am "the only person privy to that information authorized to release it ..." I question the motives of a publication managed by two graduate lawyers which chooses to illegally make known the pendency of a grievance in contravention of Section 90–10 of the Judiciary law.

Inasmuch as you refuse to deal with the reasonable requests contained in the last paragraph of my July 29 letter to you, I assume that I can expect nothing in that regard from you and will be forced by you to take the actions necessitated by your intentional injury to my professional reputation.

           Very truly yours,
           /s/   John D. Diamond

stated, *inter alia,* "You are authorized to publish this letter but only in its entirety."

In the Letters to the Editor section of *The American Lawyer*'s September, 1982 edition, which was printed on August 20, 1982, Brill published excerpts from Diamond's August 5 letter. With it he published a comment by reporter Abramson explaining that Kelley now stated that she had not filed a formal grievance because she had not yet received the necessary forms from the bar association Disciplinary Committee.[5] No indication was given that Diamond's letter had been edited before publication. On August 31, 1982, Diamond filed a certificate of copyright registration for the August 5 letter.

Diamond brought the present action on September 21, 1982 against Brill, Abramson, Kelley, and Jay Kriegel, the publisher of *The American Lawyer* until July 30, 1982. Diamond's complaint asserted claims against various combinations of defendants for, *inter alia,* infringement of the copyrighted August 5 letter, invasion of privacy, and defamation. Diamond sought compensatory and punitive damages. Since there is no diversity of citizenship, federal jurisdiction was based on the copyright claim. 28 U.S.C. § 1338(a)(1982).

Defendants moved for summary judgment and for attorney's fees on grounds that the copyright claim was a wholly meritless attempt to obtain federal jurisdiction. The district court granted the summary judgment motion, dismissing the copyright claim on the merits. In its opinion, the district court held that *The American Lawyer*'s publication of "a substantial excerpt" from Diamond's August 5 letter constituted fair use within the meaning of 17 U.S.C. § 107 (1982), and was "legitimate news reporting." It further held that Diamond "had no right" to condition publication on printing the letter in its entirety or "to commandeer the space of the publication for all that he wished to say." Finding that the copyright claim was "wholly without merit" and had "no reasonable basis," the district court granted attorney's fees and costs on that claim totaling $15,000. Having disposed of the sole federal issue, it then dismissed the seven pendent state claims.

Diamond thereupon appealed.

## DISCUSSION

The single federal claim asserted in the instant case is one of copyright infringement. We emphasize this at the outset since a claim of wrongful appropriation of a creative work differs radically from allegations of injury to professional reputation or invasion of privacy, all of which sound in state law tort and all of which entail personal injury to Diamond. It is thus irrelevant to the federal claim that the original Abramson article may have damaged or even destroyed his professional reputation or that the whole affair may have subject-

---

**5.** NO GRIEVANCE

Among several untrue allegations in ["Kitty Claws Diamond," "Bar Talk," August 1982], your publication falsely states that a grievance against me has been pending with the New York bar association since June 1982.

I have been admitted to practice law in the state of New York since 1964. No grievance has ever been filed against me. If anyone were to file a grievance against me, even an unjustified grievance, I would take that as a serious affront to my professional reputation, upon which I place great value. Your irresponsible article creates the impression that a grievance was filed against me in early June and is still pending. As you know, I am establishing my own practice. Any member of the bar who would otherwise refer matters to me would be deterred from doing so since they would incorrectly assume that the grievance you reported was of substance since it is reported as still pending after two months.

John D. Diamond
Townsend Rabinowitz Pantaleoni
& Valente
New York, New York

Author Jill Abramson replies: Mr. Diamond is correct. No grievance has been filed against him. Kelley says she called the New York State Departmental Disciplinary Committee on May 31 to make a complaint against Diamond. According to Kelley, the committee took down her information and told her that she would have to fill out a grievance form, and that it would send her one. Kelley says that as of August 6 she has not received the form. Thus there is no grievance pending against Mr. Diamond; we regret the error.

ed him to public ridicule and severe emotional distress. The sole federal issue is whether defendants wrongfully appropriated the copyrighted August 5 letter.

■ The Copyright Act of 1976, 17 U.S.C. §§ 101–810 (1982) grants the owner of an original work the sole right to use and to authorize use of that work. *Id.* § 106. The principal purpose of the legislation is to encourage the origination of creative works by attaching enforceable property rights to them. Absent such property rights, creation would be discouraged by the ease of reproduction and use without the permission of the author. However, concern that the public interest in the development of intellectual property would be impaired by overly rigid restrictions on dissemination led early on to the development of a judge-made defense of "fair use". This defense focused primarily on the injury to the copyright owner and whether "so much is taken, that the value of the original is ... diminished, or the ... original author['s labors] are substantially to an injurious extent appropriated by another." *Folsom v. Marsh*, 9 F.Cas. 342, 348 (C.C.D.Mass.1841) (No. 4,901) (Story, J.).

The Copyright Act of 1976 codified this judge-made doctrine in Section 107 which provides in pertinent part:

the fair use of a copyrighted work, ... for purposes such as ... comment [or] news reporting, ... is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

■ The appraisal of these four factors in a particular case is obviously a fact specific inquiry for which summary judgment is ill-suited, *DC Comics v. Reel Fantasy, Inc.*, 696 F.2d 24 (2d Cir.1982); *Meeropol v. Nizer*, 560 F.2d 1061 (2d Cir.1977), but not unknown where no material dispute of fact exists and a reasonable trier can reach only one conclusion. *Berlin v. E.C. Publications*, 329 F.2d 541 (2d Cir.), *cert. denied*, 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964); *Time Inc. v. Bernard Geis Associates*, 293 F.Supp. 130 (S.D.N.Y. 1968). We believe the instant case falls within the latter category and that each of the four factors enumerated in Section 107 weighs in favor of the defendants.

Factor (1), "the purpose and character of the use," must be viewed in light of the fact that it is the non-use or editing of copyrighted material which is the issue in the instant case. Diamond can hardly complain of *The American Lawyer*'s publishing of his version of the facts concerning Kelley's reported filing of a grievance in light of his July 29 letter to Brill demanding retraction and an apology. Whatever the merits, wisdom, motive, or fairness of the printing of the original story, Diamond himself demanded that matters not be left as they then stood. His present complaint, therefore, arises solely from the omission of portions of the August 5 letter.

■ Even assuming that portraying a copyrighted work in an unfair light through editing may be the basis for an infringement action, an issue which does not yield quick resolution in Diamond's favor, the use of the portions of the letter published was not wrongful under Section 107. That section expressly protects comments and news reporting, and Diamond's own demands for a retraction with regard to whether Kelley had filed a grievance are more than enough to render the portion of the letter published newsworthy. A paraphrase of Diamond's version of the facts relating to the grievance would not have been a basis for an infringement action, and we fail to see why using his own words creates such liability. Neither the material

omitted nor the failure to disclose that editing had occurred materially added or detracted from his version of the facts pertinent to the filing of the grievance, and the Abramson reply printed immediately underneath conceded that version to be true. Since the omitted portions for the most part related not to facts concerning the grievance but to various reasons why Diamond had viewed himself as deliberately wronged by Brill and others, the editing of the letter, while it may not have satisfied Diamond's desire to attack Brill and the magazine in print, did not in any sense portray the copyrighted work in an unfair light or materially mislead the public as to its contents.

■ Factor (2), "the nature of the copyrighted work," must also be weighed in light of Diamond's complaint of non-use through editing. The work in question was avowedly informational, and such works may be more freely published under Section 107 than those of a creative nature. *MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir.1981). Since the published portion of the letter set out Diamond's version of the facts concerning Kelley's filing of a grievance, the use to which it was put was properly informational, and, to that extent, our discussion of factor (1) is thus dispositive as to (2) also.

Because Diamond claims too little of his letter was published, our discussion of factor (3), "the amount and substantiality of the portion used," differs from the typical copyright case in which the plaintiff claims infringement because too much was reproduced. Viewing the facts in the light most favorable to Diamond, his argument with regard to (3) is indistinguishable from a claim of misleading editing and is fully resolved by the discussion above.

Factor (4), the effect on the potential market for, or value of, the copyrighted work weighs entirely in the defendants' favor. Diamond has conceded in deposition testimony that no present or future use of the letter has been compromised and that the value of the letter as Diamond's property has not been affected by publication in edited form. That concession is dispositive as to (4).

■ We conclude, therefore, that Diamond's copyright claim is wholly without merit and that summary judgment was properly granted on it. Since the remaining claims are entirely matters of state law, Judge Griesa did not abuse his discretion in dismissing them. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ Section 505 of the Copyright Act, 17 U.S.C. § 505, permits a court to "award a reasonable attorney's fee to the prevailing party," but a distinction exists between the award of fees to a prevailing plaintiff and an award to a prevailing defendant. *Grosset & Dunlap, Inc. v. Gulf & Western Corp.*, 534 F.Supp. 606 (S.D.N.Y.1982). Because Section 505 is intended in part to encourage the assertion of colorable copyright claims and to deter infringement, fees are generally awarded to prevailing plaintiffs. *See e.g., Breffort v. I Had A Ball Co.*, 271 F.Supp. 623, 627–28 (S.D.N.Y. 1967), *cf. Davis v. E.I. Dupont deNemours & Co.*, 257 F.Supp. 729, 731 (S.D.N.Y.1966). Fees to a prevailing defendant should not be awarded when the plaintiff's claim is colorable since such awards would diminish the intended incentive to bring such claims. *See, e.g., Italian Book Corp. v. American Broadcasting Co.*, 458 F.Supp. 65 (S.D.N.Y.1978). When the plaintiff's claims are objectively without arguable merit, however, a prevailing defendant may recover attorney's fees under Section 505. *See Mailer v. R.K.O. Teleradio Pictures, Inc.*, 332 F.2d 747 (2d Cir.1964). Because the award of fees has a statutory basis, a finding of subjective bad faith is not necessary, *compare Nemeroff v. Abelson*, 704 F.2d 652 (2d Cir.1983) *with Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), although the deliberate assertion of a meritless federal claim solely to obtain federal jurisdiction over pendent state claims qualifies as bad faith no matter how meritorious the state claims.

Judge Griesa found appellant's copyright claim to be without a reasonable legal basis, a conclusion which the discussion above amply supports. An award of statutory attorney's fees to the defendants was thus a proper exercise of discretion. The amount awarded was limited to services rendered in defense of the copyright claim and was reasonable.

Affirmed.