Mary ENGEL, As Executrix of the Estate of the late Ruth Orkin Engel, Plaintiff,

v.

WILD OATS, INC., and its officers and directors ("John Does") and New World Sales, Inc., and its officers and directors ("John Does"), Defendants.

No. 86 Civ. 5365 (RLC).

United States District Court, S.D. New York.

Oct. 3, 1986.

Jacobson & Bailin, New York City, for plaintiff; Marc Jacobson, Frances Mess, of counsel.

Thomas & White, New York City, for defendants; Kenneth Thomas, of counsel.

ROBERT L. CARTER, District Judge.

Plaintiff in this copyright infringement action is Mary Engel, daughter and executrix of the estate of the late Ruth Orkin Engel, a renowned photographer. Defendants are Ocean Atlantic Textile Screen Printing, Inc., which manufactures T-shirts and other garments and goes by the acronym "Wild Oats," and New World Sales, Inc. ("New World Sales"), which sells Wild Oats garments on a contractual basis. Also named as defendants are the officers and directors of both companies.

The late Ms. Engel is perhaps best known for her still-life color photographs of Central Park. Plaintiff has alleged that without permission Wild Oats reprinted on some of its T-shirts and sweat shirts one of these photographs from the late Ms. Engel's book *More Pictures from My Window.* Defendants concede liability for copyright infringement, leaving damages as the issue before the court.

At a hearing on damages, Mary Engel testified to her mother's stature and reputation in the fine art of photography. Plaintiff did not, however, produce evidence of either her actual damages or defendants' net profits resulting from the infringement. Injury to her mother's reputation, plaintiff asserts, is not readily ascertainable.

Jerry Klause, the president and majority stockholder of Wild Oats, testified on behalf of all defendants. He stated that with 104 employees, Wild Oats produces 360,000 shirts per month. His company has not previously been sued for copyright infringement. However, soon after plaintiff brought the infringing shirt design to Mr. Klause's attention, the director of the Wild Oats art department admitted to having produced the design from a photograph, explaining that he had found the photograph in a book. Transcript of Hearing on Damages at 21, 35. Wild Oats produced a total of approximately 2,500 shirts that

bear the infringing design. Mr. Klause also offered into evidence production reports showing net profits and sales commissions on the 2,500 shirts at $1,878.52. Defendants' Exhibits B, C.

Defendants argue that this number controls plaintiff's damages because it reflects both the ascertained profits of the infringers and the apparent absence of injury to plaintiff. In fact, according to defendants, even if statutory damages are appropriate, the ascertained net profits are the proper guide to the court's determination of damages.

Plaintiff disagrees. She argues that it is her absolute right to elect the statutory remedy. And in her view this remedy is inherently open to the court's discretion, not controlled by the net profits figure, because her damages are not readily ascertainable. Plaintiff requests the statutory maximum of $50,000 for willful infringement or, in the alternative, the maximum of $10,000 for unwillful infringement. *See* 17 U.S.C. § 504(c). She also seeks attorneys' fees and costs, and permanent injunctive relief against the infringement.

## DISCUSSION

■ The victim of a copyright infringement who seeks damages is entitled to choose between two remedies. She may pursue the actual damages she has suffered plus the infringer's additional profits; or she may elect statutory damages to be determined, within specified limits, "as the court considers just." 17 U.S.C. §§ 504(b)–504(c); *see Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 432, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984); *Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 469 (2d Cir.1985). The choice of remedies belongs to the plaintiff, as the plain language of section 504 says, and she may exercise her choice at any time before the final judgment. 17 U.S.C. § 504(c); *Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir.1983) (*per curiam*). However, once the plaintiff elects statutory damages, that remedy is generally exclusive. *Id.* (plaintiff's election of statutory remedy precludes recovery of actual damages and profits). *But see Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir.1978) (awarding statutory damages plus profits).

Plaintiff has exercised her right to elect statutory damages. The only task at this point is to determine a just award. The court takes up the task with the frank acknowledgment that its discretion on this subject is anything but narrow. Indeed, the court's "discretion and sense of justice are controlling" subject only to the specific statutory limits. *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 232, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952) (quoting *L.A. Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100, 106–07, 39 S.Ct. 194, 195–96, 63 L.Ed. 499 (1919)); *see Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.,* 725 F.2d 1, 3 (1st Cir.1983). Congress surely did not grant this discretion unthinkingly. On the contrary, flexibility in fashioning an appropriate award when actual damages and profits are unclear is entirely consonant with the broader goal of providing the copyright owner with "a potent arsenal of remedies against the infringer," *Sony Corp. v. Universal City Studios, Inc., supra,* 464 U.S. at 432, 104 S.Ct. at 784. *See F.W. Woolworth Co. v. Contemporary Arts, Inc., supra,* 344 U.S. at 231–32, 73 S.Ct. at 224–25. And it is equally consonant with the parallel goal of discouraging further infringement. *See id.* at 233, 73 S.Ct. at 225.

■ With these general considerations in mind the court must disagree with defendants' suggestion that their estimate of the profits derived from infringement should control the determination of statutory damages. The infringers' profits are a factor to consider, but only one among others. *See Fallaci v. New Gazette Literary Corp.,* 568 F.Supp. 1172, 1174 (S.D.N.Y. 1983).

■ Other factors include the nature of the copyright, the difficulty of proving actual damages, the circumstances of the infringement, and in particular whether the infringement was willful. *F.W. Wool-*

*worth Co. v. Contemporary Arts, Inc.,* su-
*pra,* 344 U.S. at 232–33, 73 S.Ct. at 225;
*F.E.L. Publications, Ltd. v. Catholic Bish-
op of Chicago,* 754 F.2d 216, 219 (7th Cir.),
*cert. dismissed,* —— U.S. ——, 106 S.Ct. 11,
87 L.Ed.2d 674, *cert. denied,* —— U.S. ——,
106 S.Ct. 79, 88 L.Ed.2d 64 (1985). The
importance of this last factor should be
emphasized because it is the one that may
affect the statutory limits on damages:
While the floor on statutory damages is
$250, the ceiling is $10,000 for unwillful
infringement but $50,000 if the infringe-
ment is willful. 17 U.S.C. § 504(c).

■■■ The court finds that the infringe-
ment by Wild Oats was willful. The pre-
ponderance of the evidence indicates that
the art director at Wild Oats copied the late
Ms. Engel's photograph from the copy-
righted book *More Pictures from My Win-
dow.* The art director knew or should have
known that the unauthorized reprinting of
a photograph from the book was a copy-
right violation. *See Fallaci v. New Ga-
zette Literary Corp., supra,* 568 F.Supp. at
1173. Although the court finds no direct
proof of the art director's actual knowledge
of the copyright infringement, the compel-
ling circumstantial evidence of his reckless
disregard for, if not actual knowledge of,
plaintiff's rights in the photograph is suffi-
cient to establish willfulness. *Wow &
Flutter Music v. Len's Tom Jones Tavern,
Inc.,* 606 F.Supp. 554, 556 (W.D.N.Y.1985);
*see Lauratex Textile Corp. v. Allton Knit-
ting Mills, Inc.,* 519 F.Supp. 730, 733 (S.D.
N.Y.1981).[1]

■■■ The court also takes note of circum-
stances apart from Wild Oats's willfulness
surrounding the infringement in this case.
The nature of plaintiff's copyright—owner-
ship of a rarefied, artistic subject matter—
is unusually susceptible to damage when
reproduced on the rather less rarefied med-
ium of a T-shirt or sweat shirt. The scale
of the infringement was not slight as de-

fendants have distributed approximately
2,500 shirts in the open market. At the
same time, the extent of plaintiff's actual
damages is virtually impossible to ascer-
tain. The harm of the infringement to the
late Ms. Engel's artistic reputation, in the
form of lost revenues from her works, may
become evident only over the years to
come.

In light of all of these circumstances, the
court has determined that $20,000 is the
proper award of damages in this case. The
award is adequate both to compensate
plaintiff for her losses and to remind de-
fendants and other would-be infringers of
the seriousness of copyright violations.

The apportionment of liability between
Wild Oats and New World Sales is a sepa-
rate matter. Wild Oats's vicarious liability
for the willfulness of its employee is be-
yond dispute. *See Sony Corp. v. Univer-
sal City Studios, supra,* 464 U.S. at 436 &
n. 18, 104 S.Ct. at 786 & n. 18; *Shapiro,
Bernstein & Co. v. H.L. Green Co.,* 316
F.2d 304, 307 (2d Cir.1963). Thus, Wild
Oats is liable for the $20,000 minus only so
much as the court may fairly charge solely
to New World Sales.

■■■ It is clear that willfulness cannot be
imputed to New World Sales. Although it
had an "obvious and direct financial inter-
est" in the infringement of plaintiff's copy-
right, New World Sales lacks the "right
and ability to supervise" Wild Oats which
would justify holding the former vicarious-
ly liable for the full $20,000. *Shapiro,
Bernstein & Co. v. H.L. Green Co., supra,*
316 F.2d at 307; *see Sony Corp. v. Univer-
sal City Studios, Inc., supra,* 464 U.S. at
436, 104 S.Ct. at 786.

■■■ Rather, the court finds that New
World Sales dealt with Wild Oats as an
independent contractor, and that upon re-
ceiving its commissions for shirts sold at
Wild Oats's request, it "retained no further
interest in ... [Wild Oats's] marketing ac-

---

1. Defendants rightly note that a record of previ-
ous copyright infringement supports a finding
of willfulness. *See Lauratex Textile Corp. v.
Allton Knitting Mills, Inc.,* 517 F.Supp. 900, 903
(S.D.N.Y.1981). Defendants point out that they

have no such record. But again, although this
factor is one for the court to consider, it is by
no means conclusive. There is a first time for
everything.

tivities." *Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 472 (2d Cir.1985). Its sole liability is accordingly limited to $1,011.25, the sales commissions it derived from the infringement, *see* Defendants' Exhibit B. *Cf. Abeshouse v. Ultragraphics, Inc., supra,* 754 F.2d at 472 (where plaintiff was awarded actual damages and profits under section 504(b), secondary infringer was solely liable for its profits and jointly liable for additional actual damages). Wild Oats remains solely liable for the balance of the $20,000 award, that is, $18,988.75.

■ The court notes that the officers and directors of a corporation are personally liable for copyright infringement when they have the ability to supervise infringing activity and a financial interest in the activity. *Lauratex Textile Corp. v. Allton Knitting Mills Inc.,* 517 F.Supp. 900, 904 (S.D.N.Y. 1981); *see Shapiro, Bernstein & Co. v. H.L. Green Co., supra,* 316 F.2d at 307. Accordingly, the court holds the officers and directors of Wild Oats jointly and severally liable with Wild Oats for the $18,988.75. Similarly, the court holds New World Sales's officers and directors jointly and severally liable for its share of liability, $1,011.25.

Plaintiff also seeks attorneys' fees and costs pursuant to 17 U.S.C. § 505. Fees and costs in copyright infringement cases, like statutory damages, are matters assigned to the court's discretion, to be awarded with an eye toward encouraging the pursuit of colorable copyright claims and deterring further infringement. *See Diamond v. Am-Law Publishing Corp.,* 745 F.2d 142, 148 (2d Cir.1984); *Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir.1983) (*per curiam*). In determining an appropriate attorneys' fee, the court considers, among other things, "the amount of work, the skill employed, damages at issue, and the result achieved." *Id.*

Counsel for plaintiff submits that 53.85 hours of associate's time was spent on this matter at a billing rate of $115.00 per hour; and that 3.55 hours of partner's time was spent, at a billing rate of $150.00 per hour. Thus, plaintiff claims a total of $6,725.25 in attorneys' fees.

■ The court finds that the billing rates are consistent with New York standards, and that the time spent on the matter, although considerable, is not outrageous. An award of attorneys' fees and costs is appropriate in view of the general principles set forth above and this court's specific finding that the copyright infringement was willful. However, the court believes that the attorneys' fee that plaintiff requests is excessive. The contributions of plaintiff's counsel to the disposition of this case were less than substantial. Conversely, defendants and their counsel were cooperative and comported themselves professionally; and the court intends not to penalize them for doing so. The court awards to plaintiff costs and an attorneys' fee of $3,000.00.

Finally, plaintiff moves to permanently enjoin defendants from further infringement of her copyright, and to order delivery to her of defendants' infringing shirts. Defendants state that they have no opposition to this motion and assert their willingness to comply with the injunction. Accordingly, defendants are enjoined from further infringement and ordered to deliver to plaintiff all infringing shirts that remain in their possession or may with reasonable diligence be recalled.[2] *See* 17 U.S.C. §§ 502–503.

IT IS SO ORDERED.

---

**2.** In her brief, plaintiff seeks "proof of destruction (or delivery to her) of all of the infringing tee-shirts." Plaintiff's Memorandum of Law on the Measure of Damages for Copyright Infringement at 14. To the extent that this request should be interpreted as a motion for disposition of shirts already transferred for value to ultimate purchasers, plaintiff's motion is denied. *See, e.g., National Research Bureau, Inc. v. Kucker,* 481 F.Supp. 612, 615 (S.D.N.Y.1979) (declining to order recall of already-distributed materials on the ground that "[t]his appears impractical").