**Don GETZ, Plaintiff,**

v.

**PENTHOUSE INTERNATIONAL, LTD., Penthouse Creations, Ltd., Penthouse Productions, Ltd., Penthouse Publications Ltd., Video Sound, S.A., Penthouse Films International, Ltd., Penthouse Clubs International Establishment and Robert Guccione, Defendants.**

**No. 84 Civ. 5007 (JES).**

United States District Court, S.D. New York.

March 13, 1987.

**1204**

Pryor, Cashman, Sherman & Flynn, New York City, for plaintiff; Donald S. Zakarin, Andrew H. Bart, of counsel.

Grutman Miller Greenspoon Hendler & Levin, New York City, for defendants; Jeffrey H. Daichman, Leonard A. Rodes, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

The plaintiff, Don Getz, commenced this action in July 1984 seeking to recover damages pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq* (1982 & Supp. II 1984).[1] The principal defendants in this case are Robert Guccione, Penthouse Creations, Ltd., ("Creations"), Penthouse Productions, Ltd., ("Productions"), and Penthouse Publications Ltd., ("Publications").[2] According to the complaint, all of the corporate defendants are affiliated corporations wholly-owned and used interchangeably by the defendant Guccione. *See* Complaint at ¶ 7. These corporate entities and Guccione will be referred to collectively as "Penthouse" or "the Penthouse organization."

All defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that plaintiff's RICO claims are barred by the applicable statute of limitations. For the reasons set forth *infra*, the Court grants defendants' motion. for summary judgment.

## BACKGROUND

Plaintiff alleges the following facts with respect to his RICO claim in his complaint and 3(g) statement.[3] On May 17, 1976, the

---

1. Plaintiff also alleges state law claims of fraud and breach of contract. The sole basis set forth in the complaint for the Court's subject matter jurisdiction over these claims is pendent jurisdiction. *See* Complaint at ¶ 8.

   In view of the Court's dismissal of plaintiff's RICO claims, the Court declines to exercise pendent jurisdiction over these state law claims. The Court is dismissing the RICO claims pursuant to a motion for summary judgment at an early stage in the proceedings and, therefore, no considerations of judicial economy justify the exercise of pendent jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966);

*Diamond v. Am-Law Publishing Corp.*, 745 F.2d 142, 148 (2d Cir.1984).

2. The remaining defendants set forth in the complaint are: Penthouse International, Ltd., Video Sound, S.A., Penthouse Films International, Ltd., and Penthouse Clubs International Establishment.

3. Pursuant to Local Civil Rule 3(g), a party moving for summary judgment must file a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." *See* Rules of the United States District Courts For The Southern and Eastern Districts of New York.

plaintiff entered into a contract ("the contract") with Productions. *See* Complaint at ¶ 11; Pl. 3(g) Stmt. at ¶ 1.[4] Plaintiff's 3(g) statement notes that the contract was signed by a Mr. Kreditor, who is not a party to this action. According to the 3(g) statement, Mr. Kreditor signed the contract on behalf of Productions. Plaintiff also notes, however, that the contract was signed on the stationery of another defendant, Publications. *See* Pl. 3(g) Stmt. at ¶ 1.

Pursuant to this contract, the plaintiff was authorized to act as the exclusive sales agent for the film entitled "Caligula" in all countries except the United States, Canada, and Italy. *See* Complaint at ¶ 12. As consideration for his efforts, plaintiff was to receive 10% of all remittances as a commission. *See id.* The contract also provided that if the plaintiff was unable to consummate sales of $1,000,000.00 on or before November 17, 1976, Productions had the right to cancel the contract for all territories that remained unsold. *See id.*

The complaint further alleges that the Penthouse organization in bad faith defrauded the plaintiff, in that it never intended to pay the plaintiff for his services or to be bound by the terms of this contract. *See id.* at ¶¶ 20, 27. According to the complaint, on April 6, 1979, as "the culmination of this fraudulent scheme," the defendants wrongfully purported to terminate the agreement, even though the plaintiff had already secured sales in excess of $1,000,000.00. *See id.* at ¶¶ 14, 20. Based on these allegations, the plaintiff contends that the defendants violated RICO in that they "conducted and participated, directly and indirectly, in the conduct of [an] enterprise through a pattern of racketeering activity, as those terms are defined in 18 U.S.C. section 1961, consisting of at least two acts of mail fraud and wire fraud, such

acts having taken place within a period of less than 10 years of each other." *See id.* at ¶ 17.

Significantly, although the complaint states that the pattern of racketeering activity continued through the filing of the complaint, the most recent predicate act of racketeering alleged is the defendants' purported termination of the contract on April 6, 1979. *See id.* at ¶¶ 14, 17, 20. Indeed, as noted above, the complaint states that the termination of plaintiff's services and denial of plaintiff's right to the commissions was the "culmination" of the fraudulent scheme. *See id.* at ¶ 20.

Prior to commencing the instant action, plaintiff filed several lawsuits in England based upon the alleged wrongful termination of the contract. Plaintiff alleges that more than one lawsuit was commenced in England due to his confusion as to which corporation in the Penthouse organization was the proper party to the contract. Initially, on June 25, 1979, the plaintiff filed an action in the courts of England against the defendant Publications. *See* Pl. 3(g) Stmt. at ¶ 4; Def. 3(g) Stmt. at ¶ 3. As noted above, the contract was written and signed on Publications' stationery.

In that action, plaintiff sought, *inter alia,* damages resulting from the alleged termination of the contract. *See* Pl. 3(g) Stmt. at Ex. C. Publications answered this complaint by asserting that Productions, not Publications, was the proper party in interest to the contract. As a consequence, plaintiff amended the complaint to add additional parties, including Productions. *See* Pl. 3(g) Stmt. at ¶ 5.

Plaintiff further contends that, although at this time the Penthouse organization asserted that Productions was the proper party in interest, plaintiff was unable to

---

In addition, the party opposing the motion must file a "short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." *See id.* The parties' respective statements filed pursuant to this Rule will be referred to by the Court as "3(g) statements."

**4.** The complaint does not specify which one of the defendants executed the contract with the

plaintiff. Thus, the complaint merely states that the plaintiff contracted with "Penthouse," a name plaintiff uses to refer to all defendants collectively. *See* Complaint at ¶¶ 7, 11. Plaintiff in his 3(g) statement, however, states that the contract was with Productions. As is noted *infra,* Productions has changed its name to Creations, another defendant in this action.

ascertain whether Productions was an existing corporation. Moreover, plaintiff claims that the Penthouse organization refused to provide written confirmation of Productions' existence. *See id.* at ¶ 8. Therefore, plaintiff instituted a second action in England against Mr. Kreditor, on the ground that he signed the complaint on behalf of a non-existent principal. *See id.*

The answer to the complaint against Kreditor was filed in May of 1982. Plaintiff claims that in this answer, the Penthouse organization *for the first time* provided proof that Productions had changed its name to Penthouse Creations, Ltd., and that this name change had occurred six months prior to the execution of the contract. *See id.* at ¶ 9. Plaintiff then permitted the initial action against Productions and Publications to be dismissed on consent and plaintiff commenced a third action against Creations in England on July 21, 1983. Plaintiff then commenced the instant action against the entire Penthouse organization on July 13, 1984. *See id.* at ¶ 10.

The Court notes that although plaintiff contends that he was unaware that Publications had changed its name to Creations until May of 1982, the plaintiff has not supported this contention with any affidavits or other documentary proof. Instead, plaintiff merely relies upon conclusory assertions to that effect in his 3(g) statement and memorandum of law. In contrast, the defendants have provided the court with documentary evidence that in April of 1981 defendants did inform the plaintiff that Productions had changed its name to Creations.

Defendants' documentary proof consists of correspondence between plaintiff's English counsel and Penthouse' counsel in connection with the English litigations. In the first letter, dated April 27, 1981, Penthouse

unequivocally informs the plaintiff that Productions changed its name to Creations. *See* Aff. of Rodes at Ex. D. Moreover, in a letter dated April 29, 1981 from plaintiff's attorneys in England to Penthouse' counsel, plaintiff acknowledges receipt of that letter and also requests a copy of the certificate showing the details with respect to the name change. *See id.* at Ex. E. In a letter dated June 19, 1981, Penthouse' attorneys provided plaintiff's attorneys with the requested documentation detailing the name change. *See id.* at Ex. H. By letter dated June 23, 1981, plaintiff's counsel in England acknowledged receipt of that documentation. *See id.* at Ex. I.

### ANALYSIS

I. *The Applicable Statute of Limitations Period*

As noted above, the defendants move for summary judgment on the ground that the RICO claim is barred by the statute of limitations. To resolve this issue, the Court first must determine the applicable limitations period. Since RICO does not provide for its own statute of limitations, the Court must borrow and apply the most appropriate limitations period provided by the forum state's law. *See Durante Brothers and Sons, Inc. v. Flushing National Bank,* 755 F.2d 239, 244, *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *see also Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).[5]

Plaintiff argues that because his RICO claim is predicated on mail and telephone fraud, the Court should apply the six-year New York statute of limitations governing

---

5. In *Durante, supra,* the Second Circuit noted that there was no relevant federal statute of limitations which could be applied to civil RICO actions. *See* 755 F.2d at 248. *Compare Del Costello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (borrowing federal statute of limitations for actions by an employee against an employer and union, for breach of a collective-bargaining agreement and breach of a duty of fair representation, respectively); *Bartels v. Clayton Brokerage Co. of St. Louis, Inc.,* 631 F.Supp. 442 (S.D.N.Y.1986) (borrowing federal statute of limitations for RICO action predicated on a commodities fraud scheme). Moreover, neither party in this action has contended that any analogous federal statute of limitations governs the instant claim.

actions based on fraud. *See* N.Y.Civ. Prac.Law ("CPLR") § 213(8) (McKinney 1972). Defendants, on the other hand, argue that the Court should apply the three-year New York statute of limitations governing actions to enforce a liability created by statute. *See* CPLR § 214(2). For the reasons set forth below, the Court concludes that the three-year statute of limitations set forth in CPLR § 214(2) applies in this case.

In *Durante, supra,* the Second Circuit held that the three-year statute of limitations set forth in CPLR § 214(2) applies to a RICO action predicated on the collection of an unlawful debt. *See* 755 F.2d at 249. In so holding, the court reversed the district court's determination that the appropriate statute of limitations was New York's statute governing actions to recover overcharges of interest. The Second Circuit determined that "the civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge," *see id.* at 248, and noted that the elements of a civil RICO cause of action predicated on the collection of an unlawful debt were very different than the elements of a state law usury claim. *See id.* at 249.[6] Therefore, the court found that the civil RICO claim was not analogous to a state law claim for usury and the court concluded that the most appropriate limitations period was CPLR § 214(2), which governs actions to enforce a liability created by statute. *See id.*

In *Durante,* the parties did not raise, and therefore the Second Circuit did not address, the issue of whether CPLR § 214(2) should apply uniformly to all RICO actions filed in New York. Subsequent to the *Durante* opinion, however, the Supreme Court indicated in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that in choosing the most appropriate state statute of limitations to borrow with respect to a federal cause of action, the court must determine whether a uniform statute of limitations or a limitations period that varies depending on the factual circumstances of the particular case will best effectuate the congressional purpose underlying the federal action. *See id.* at 275, 105 S.Ct. at 1946; *see also Malley-Duff & Associates v. Crown Life Insurance Co.,* 792 F.2d 341, 345 & n. 9 (3d Cir.1986); *Silverberg v. Thomson McKinnon Securities, Inc.,* 787 F.2d 1079, 1083 (6th Cir.1986). In *Wilson,* the Supreme Court held that both the federal interests in certainty and the minimization of unnecessary litigation supported the conclusion that the appropriate statute of limitations period for actions pursuant to 42 U.S.C. § 1983 should be uniform within each state. *See Wilson, supra,* 471 U.S. at 275, 105 S.Ct. at 1946.

These same considerations require that a uniform limitations period within each state should apply to all RICO claims. *Accord Malley-Duff, supra,* 792 F.2d at 349; *Bankers Trust Company v. Feldesman,* 648 F.Supp. 17 (S.D.N.Y.1986). *But see Silverberg, supra,* 787 F.2d at 1083; *Fustok v. ContiCommodity Services, Inc.,* 618 F.Supp. 1076, 1080-81 (S.D.N.Y.1985).[7]

**6.** According to the court in *Durante,* success on the civil RICO claim based on collection of an unlawful debt requires proof of the following ten elements:

(1) there was a RICO enterprise, (2) its activities affected interstate commerce, (3) the individual defendants were employed by or associated with the enterprise, (4) the Bank used, in the operation of the enterprise, income derived from the collection of unlawful debt, ... (5) the individual defendants participated in the conduct of the affairs of the enterprise through collection of unlawful debt.... (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (7) the debt was incurred in connection with "the business of lending money ... at a [usurious] rate," ... (8) the usurious rate

was at least twice the enforceable rate, (9) as a result of the above confluence of factors, (10) it was injured in its business or property.

755 F.2d at 248 (quoting 18 U.S.C. § 1961(6) (1982)). The court noted, however, that a claimant could establish a state law claim for usury without proof of nine of these ten elements. *See* 755 F.2d at 249.

**7.** In *Fustok, supra,* Judge Lasker concluded that New York's six-year statute of limitations period for actions based on fraud, CPLR § 213(8), should apply to RICO actions predicated on mail fraud. *See* 618 F.Supp. at 1081. It is significant that Judge Lasker noted "strong practical considerations" supported the conclusion that the limitations period set forth in CPLR § 213(8) should apply. In *Fustok,* appli-

Civil RICO was intended by Congress to be a useful remedial device supplementing the criminal laws in Congress' attempt to eradicate organized crime. *See Malley-Duff, supra,* 792 F.2d at 349. As the Third Circuit noted in *Malley-Duff,* those purposes would be thwarted by the uncertainty and time-consuming litigation which inevitably occurs when the limitations period selected turns on the particular facts underlying the predicate acts alleged. *See id.* at 348–49; *HMK Corp. v. Walsey,* 637 F.Supp. 710, 720 (E.D.Va.1986).

This is especially true, since, as the *Durante* opinion illustrates, garden variety state law claims are simply not analogous to civil RICO claims,[8] and, therefore, finding the correct state statute to fit the RICO claim will almost always "incite complex and expensive litigation over what should be a straight-forward matter." *See Malley-Duff, supra,* 792 F.2d at 349 (quoting A.B.A. Section of Corporation, Banking and Business Law, *Report of the Ad Hoc Civil RICO Task Force,* 391–92 (1985)). This problem is further compounded by the fact that civil RICO claims may be based on widely different predicate acts, rendering it less likely that a particular state law claim will be analagous to the RICO claim. *See Malley-Duff, supra,* 792 F.2d at 348.

In short, "subjecting civil RICO claims to the statute of limitations of the predicate acts represents an unworkable solution in all but a few cases." *See Morley v. Cohen,* 610 F.Supp. 798, 809 (D.Md.1985).

■ Therefore, the Court concludes that in choosing the most appropriate state law limitations period for the instant RICO claim, the Court must choose the most appropriate New York statute of limitations to fit *all* RICO claims. Given this conclusion, the Court rejects plaintiff's suggestion that the Court apply the six-year New York statute of limitations governing actions based on fraud because obviously a garden variety fraud action cannot encompass the myriad of factual predicates which may underlie a RICO claim. Since there is no state law analogue to a civil RICO claim, the Court holds that the most appropriate limitations period for civil RICO is the three-year limitations period set forth in CPLR § 214(2), which governs actions to enforce a liability created by statute. *See Banker's Trust, supra,* 648 F.Supp. at 34–35; *Teltronics Services, Inc. v. Anaconda-Ericsson, Inc.,* 587 F.Supp. 724, 733 (E.D. N.Y.1984); *cf. Durante, supra,* 755 F.2d at 249.[9]

cation of the six rather than the three year limitations period, resulted in the denial of the defendants' summary judgment motion with respect to the RICO claim. Judge Lasker stated that the case was about to go to trial and keeping the RICO claims in that case would not significantly add to the length of the trial. Judge Lasker was influenced by the fact that the denial of the defendant's motion had the effect of avoiding a costly retrial in the event the Second Circuit subsequently clarified *Durante* and held that a six-year limitations period applies to RICO actions predicated on mail fraud. *See id.*

8. Indeed, the RICO claim in the instant action, predicated on mail and telephone fraud, is as far removed from New York's common law fraud action as the claim in *Durante,* predicated on the collection of an unlawful debt, was from an action to recover excessive interest. As the Third Circuit in *Malley-Duff, supra,* stated: "We believe a similar analysis [as the Second Circuit undertook in *Durante* ] would apply to any RICO claim. Concepts such as RICO 'enterprise' and 'pattern of racketeering activity' were simply unknown to common law, and all federal crimes contain jurisdictional and other ele-

ments irrelevent to any state civil action." *See* 792 F.2d at 348. *But see Silverberg, supra,* 787 F.2d at 1083.

9. The Court is not unmindful of the fact that the Supreme Court in *Wilson, supra,* rejected a similar limitations period for § 1983 actions, instead choosing the limitations period for tort actions. In the § 1983 context, however, the absence of causes of action created by statutes and statutes of limitations relating thereto at the time § 1983 was enacted made it unlikely that Congress intended to apply a limitation period for a liability created by statute to § 1983 actions. *See Wilson, supra,* 471 U.S. at 278, 105 S.Ct. at 1948. However, at the time civil RICO was enacted, liability predicated on statutes as well as limitations periods relating thereto had become common. Therefore, it is reasonable to conclude that Congress intended to apply to civil RICO a state law limitations period governing actions to enforce a liability created by statute since such a limitation period would best effectuate the remedial purposes of civil RICO.

The Court also notes that its holding here is consistent with and indeed may be controlled by the Second Circuit's recent Opinion in *Cullen*

## II. *Accrual of Plaintiff's Civil RICO Cause of Action*

In light of the Court's holding that a three-year statute of limitations applies to plaintiff's civil RICO claim, because plaintiff did not commence the instant action until July of 1984, plaintiff's RICO claim is time-barred unless the cause of action accrued on or after July of 1981. Plaintiff argues that although plaintiff was notified in April of 1979 that the defendants were terminating the contract, the RICO claim did not accrue until May of 1982, because his "RICO claim focuses on the entire Penthouse enterprise and the fraudulent use of various corporate components of the enterprise to deny plaintiff ... his contractual rights." *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("P.O.") at 22. Thus, the plaintiff argues that the defendants fraudulent acts continued after the termination of the contract because the defendants concealed from the plaintiff that Creations was the true party to the contract. Based on this characterization of his RICO claim, plaintiff argues that the claim did not accrue until May 1982, when the defendants revealed "for the first time" that Productions had changed its name to Creations. *See* Pl. 3(g) Stmt. at ¶ 9; P.O. at 24.

Defendants, on the other hand, argue that the plaintiff's cause of action accrued in 1979 when the defendants' allegedly terminated the contract. In the alternative, the defendants argue that summary judgment is appropriate because the documentary proof incontrovertibly establishes that plaintiff was aware that Creations was the proper party to the contract no later than April 1981.

■ At the outset, the Court notes that plaintiff's complaint, fairly read, *see Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), does not allege that the defendants defrauded the plaintiff by the use of various corporate entities to conceal from the plaintiff the true party to the contract. These allegations are contained solely in plaintiff's 3(g) statement, which cannot properly expand the allegations of the complaint. The only specific fraudulent act alleged in the complaint is the defendants' alleged wrongful termination of the contract. *See* Complaint at ¶¶ 14, 20. This occurred on April 6, 1979. Therefore, the civil RICO claim alleged in the complaint accrued in 1979 and that claim is clearly time barred.

In any event, even if plaintiff's complaint could be construed to contain the allegations set forth in plaintiff's 3(g) statement, or amended to include it, plaintiff has failed to come forward with any facts from which a rational factfinder could conclude that after April 1981 defendants concealed from the plaintiff that Creations was the contracting party. Indeed, on April 27, 1981 Penthouse explicitly informed plaintiff by letter that Productions had changed its name to Creations and plaintiff's counsel in England acknowledged receipt of that letter. *See* Rodes Aff. at Exs. D, E. Moreover, on June 19, 1981, defendants' English counsel provided the plaintiff with copies of the formal documents evidencing the name change. *See id.* at Ex. H. Plaintiff acknowledged receipt of that information as well.

In view of this incontrovertible documentary proof, plaintiff's conclusory statements set forth solely in his 3(g) statement and memorandum of law that he was unaware of the name change until 1982 is plainly insufficient to raise a genuine issue of material fact which would require the denial of defendant's motion for summary judgment. *Cf. Celotex Corp. v. Catrett*, — U.S. ——, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). This is especially true since plaintiff has not even submitted an affidavit alleging he was unaware of the name change until 1982.[10]

---

*v. The Nassau County Republican Committee,* 811 F.2d 698 (2d Cir.1987), which held that CPLR § 214(2) applied to RICO claims based on a pattern of racketeering activity as well as RICO claims based on the collection of an unlawful debt.

10. Plaintiff was afforded ample opportunity to provide the Court with such a factual affidavit based on personal knowledge. Indeed, at oral argument, plaintiff's counsel informed the Court that that affidavit would be filed. When plain-

■ Plaintiff does refer to one letter, which was provided to the court after the motion for summary judgment was fully submitted, which plaintiff argues creates a genuine issue of material fact for trial.[11] In that February 3, 1982 letter, plaintiff's attorney in England writes to Penthouse's attorney complaining that he "can find no company trading under the name of Penthouse Production Limited in any country in the world as at [sic] 17th May 1976," *see* Rodes Aff. at Ex. C, the date the contract was executed. The defendants, however, had previously unequivocally informed plaintiff in April of 1981 that Productions had changed its name to Creations, and in June of 1981 had provided the plaintiff with the documentation evidencing that name change. If plaintiff's English attorney chose to deliberately ignore that information or was confused as to the proper

contracting party, that confusion cannot be properly attributed to any conduct of the defendants. In short, no rational fact-finder could conclude, in the face of defendants' letters, that the defendants fraudulently concealed the circumstances surrounding Productions' name change after April or June, 1981. *Cf. Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986).[12]

■ It follows that plaintiff's claim accrued at the latest in April or June of 1981 and not in May 1982 as contended by plaintiff.[13] Since the instant action was not commenced until July of 1984, plaintiff's civil RICO claim is barred by the applicable three-year limitations period. Therefore, the court grants defendants' motion for summary judgment.[14]

---

tiff had still not submitted any affidavit over one month after the oral argument, the Court issued a written order granting the parties leave to file supplemental affidavits. As noted above, no supplemental affidavits were ever filed with the Court.

Nor is this a case where plaintiff's failure to provide an affidavit based on personal knowledge can be excused because plaintiff has not had discovery. Plaintiff is presently in possession of all of the facts with respect to when he was informed by defendants of the name change. Moreover, even if plaintiff had filed such an affidavit with the Court, that affidavit would not have been sufficient to defeat the instant motion for summary judgment in light of the incontrovertible documentary proof submitted by the defendants.

11. The plaintiff has also provided the Court with another letter sent from defendant's English attorney to plaintiff's English attorney in connection with the prior actions in England. *See* Pl. 3(g) Stmt. at Ex. E. In this letter dated April 5, 1981, defendants' attorney informs the plaintiff that "[a]lthough we cannot be one hundred per cent certain at the time of this writing, a preliminary investigation elicits the information that the Company Penthouse Productions Limited definitely exists." This letter, however, was written prior to the defendants' April 27, 1981 letter, which informed plaintiff that Productions had changed its name to Creations. Therefore, the letter is hardly relevant to the issue of whether defendants continued to conceal the name change after April or June of 1981.

12. For the same reasons, plaintiff's argument that the statute of limitations should be tolled or that the defendant should be equitably estopped

from asserting the statute of limitations due to defendants' alleged concealment of the true party to the contract must be rejected. As noted above, the defendants' alleged concealment terminated in June 1981.

13. Plaintiff's fleeting suggestion in his memorandum of law that the RICO cause of action still had not accrued even at the time of the filing of the complaint because the defendants have fraudulently concealed funds earned by the film through the use of multiple corporations, *see* P.O. at 24, lacks merit. This conclusory allegation of the concealment of funds is neither set forth in the complaint nor in plaintiff's 3(g) statement, and is also not supported by any affidavit.

Moreover, this claim is legally irrelevant to whether the plaintiff should have sued within three years of the date when it was informed that Creations was the proper party to be sued. The graveman of plaintiff's civil RICO claim is that the defendant wrongfully terminated the contract. The fact that the defendants may or may not have concealed funds earned from the film has nothing whatsoever to do with that claim.

14. Defendants also move for sanctions pursuant to Fed.R.Civ.P. 11. Defendants seek reimbursement from the plaintiff for their costs incurred in responding to plaintiff's argument that the cause of action did not accrue until May of 1982. While it is true that plaintiff's counsel should have been aware of the existence of the correspondence sent in connection with the actions in England, which correspondence clearly establishes that the defendants could not have concealed the corporate name change after June, 1981, the Court is not convinced that this

## CONCLUSION

Defendants' motion for summary judgment is granted. Defendants' motion for Rule 11 sanctions is denied. *See* note 14, *supra.* The complaint is dismissed with prejudice.

The Clerk of the Court shall enter judgment accordingly.

is an appropriate case for the imposition of Rule 11 sanctions. The bulk of the motion papers filed were directed to the major issue presented in this action, to wit the appropriate limitations period for civil RICO actions. Plaintiff's position on that issue was clearly not so frivolous as to justify Rule 11 sanctions. Moreover, that issue would have remained in this action even if the plaintiff had abandoned his accrual argument. Therefore, the Court does not find that the defendants have suffered any substantial prejudice as a result of the plaintiff's failure to abandon the accrual argument earlier and the Court will not impose Rule 11 sanctions.